## THE STATE OF KANSAS v. JOSEPH CLYNE.

1. LIBEL—*Malice—Motive.* When a person intentionally and personally publishes of another what is libelous, by the general doctrine, he is held to have malice in law against him, whatever the motive in fact.

2. PUBLICATION—*Motive in Writing—Evidence.* Where a person is informed against in a criminal action for the publication of a libelous article charging another with having been posted, before a robbery, as to the time it would occur, and upon the trial the court permits the defendant, who is a witness in his own behalf, to testify fully with regard to when, where and how he obtained the information concerning the matters published, and as to all the facts and circumstances relevant to said publication, and also permits such witness to testify that when he published the article "he believed its statements were true," *held*, that the trial court committed no prejudicial error in refusing to permit the defendant to testify as to the purpose or motive he had in view in writing the article for publication.

3. INFORMATION, *Sufficient.* The information examined, and *held* to be sufficient, and not indefinite.

*Appeal from Stafford District Court.*

ON the 5th day of October, 1892, there was filed in the district court of Stafford county the following information, omitting caption, jurat, and the names of witnesses:

"I, the undersigned county attorney of Stafford county, Kansas, in the name and by the authority and on behalf of the state of Kansas, give information, that on the 22d day September, 1892, in said county of Stafford and state of Kansas, one Joseph Clyne did then and there unlawfully, willfully and maliciously make, compose, write, and publish, and cause to be written and published, a false, malicious and defamatory libel, containing divers false, scandalous, malicious and defamatory matters of and concerning one Frank S. Larabee, and of and concerning the evidence given of and about the said Frank S. Larabee on a certain trial then had in the district court of Reno county, Kansas, in a cause wherein the state of Kansas was plaintiff and B. A. Webber was defendant, according to the tenor and effect following, that is to say:

"'Thieves fall out [meaning the said Frank S. Larabee and certain persons who had been charged and arrested for the offenses of larceny and embezzlement of moneys and other personal property from the county treasurer's office in Stafford county, Kansas]. The case against the Stafford county boodlers [and meaning the cases against these certain persons above mentioned as having been charged and arrested for the offenses aforesaid, and among which was the case of the state of Kansas, plaintiff, against B. A. Webber, defendant] is now occupying the attention of Judge Martin's court at Hutchinson, [meaning the district court of Reno county, Kansas, held at Hutchinson, in said Reno county, and presided over by Judge Martin,] Oliver, [meaning James K. Oliver,] one of the accused, [meaning one of the persons charged and arrested as above stated,] has turned state's evidence and gave the whole robbery away [meaning that the said James K. Oliver had in his evidence given the facts relating to the offenses for which certain persons were charged and arrested as above stated]. He [meaning James K. Oliver] testified on oath [meaning that he testified as a witness on the trial of the said case of the state of Kansas, plaintiff, against B. A. Webber, defendant, in the district court of said Reno county] that he

went to Frank Larabee [meaning the said Frank S. Larabee] and told him the courthouse [meaning the county treasurer's office in the courthouse at St. John, in Stafford county, Kansas] was to be robbed, [meaning that money and other personal property in said treasurer's office was going to be stolen,] and if he had any money there [meaning in said treasurer's office] to get it out at once. It was further developed in the evidence, [meaning the evidence on the said trial in which the state of Kansas was plaintiff and B. A. Webber was defendant,] that Larabee [meaning said Frank S. Larabee] went to the treasurer [meaning the county treasurer of Stafford county, Kansas] and drew a large sum of money a day or two before the robbery [meaning before the commission of the offenses for which certain persons were charged and arrested as aforesaid]. We [meaning Joseph Clyne] understand that Larabee [meaning said Frank S. Larabee] corroborates the above evidence, [meaning the said testimony of the said James K. Oliver and other evidence on said trial,] and admitted being posted as to the time the robbery would occur [meaning the time when the offenses for which certain persons were charged and arrested as above stated would occur].'

"And I, the said county attorney, further state, that prior to the 22d day of September, 1892, and in the year of 1892, the certain persons above referred to, to wit, William Glasscock, W. D. Wilson, the said Joseph Clyne, the said James K. Oliver, and the said B. A. Webber, had been charged and arrested for the larceny of money and other personal property from the office of the county treasurer of Stafford county, Kansas, and E. H. Landes had been charged and arrested for the embezzlement of money and other personal property from the office of the said county treasurer, and the trial of the said B. A. Webber hereinbefore referred to was a trial of him under the said charge against him.

"And by the said composing, writing and publishing the false, malicious and defamatory libel in the foregoing article set forth, and in the causing the same to be written and published as aforesaid, the said Joseph Clyne did maliciously charge that the said Frank S. Larabee had knowledge that the said offenses would be committed, and of the time when they would be committed, and that he had such knowledge before they were committed, and that he admitted that he had such knowledge, and that it had been given in evidence on the trial of the said case of the state of Kansas, plaintiff, against B. A.

Webber, defendant, that he, the said Frank S. Larabee, was in possession of such knowledge before said offenses were committed, and that by reason thereof he went to the county treasurer of said Stafford county and drew from him a large sum of money a day or two before the said offenses were committed. And all of which said charges against, of and concerning said Frank S. Larabee so contained in said published article were false and malicious, and were so made for the purpose of defaming the said Frank S. Larabee.

"And the said Joseph Clyne did, on the — day of September, 1892, unlawfully, maliciously and willfully publish and cause to be published in *The People's Paper*, which was a newspaper published at the city of Stafford, in Stafford county, Kansas, and circulated in said Stafford county, the said false, malicious and defamatory libel, tending to injure, scandalize and vilify the good name, fame and reputation of said Frank S. Larabee, and tending to provoke him to wrath and to expose him to public hatred, contempt, and ridicule, and to deprive him of the benefits of public confidence and social intercourse, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Kansas.          O. C. JENNINGS,
*County Attorney of Stafford county, Kansas."*

On February 7, 1893, the defendant filed a motion to quash the information upon various grounds. This motion was submitted to the court without argument and overruled. Trial was had at the February term, 1893, before the court with a jury. The jury returned a verdict against the defendant, Joseph Clyne, of "guilty as charged." The defendant filed a motion for a new trial, and also a motion in arrest of judgment. Both of the motions were overruled. The defendant was sentenced to pay a fine of $150 and costs of the prosecution, and to be committed to the county jail of Reno county until the fine and costs were paid, there being no county jail in Stafford county. Clyne, the defendant, excepted and brings the case here.

*Mosely & Waters*, for appellant:

Clyne was sworn as a witness, and his attorney asked him this question: "I wish you to state, Mr. Clyne, the purpose

which actuated you, the motive you had in view, in writing that article for publication." The state objected to the question as incompetent, irrelevant, and immaterial, "the article will speak for itself, together with the facts and circumstances which surround it." This objection the court sustained.

The motive or intent is the very gist of the action. That the defendant can be questioned as to his motives or intentions, is elementary. His answers as to his motives were to be weighed by the jury as any other evidence. The occasion was one of privilege. Larabee was a candidate. Presumption of malice is rebutted, and the burden is on the state. Odg. Lib. 184; 10 Fed. Rep. 619; *Rowland v. DeCamp,* 96 Pa. St. 493; 68 Iowa, 726; 81 Ind. 527; 30 N. Y. 20.

It is sufficient to confer privilege that the matter is one of public interest to the community. *Nix v. Caldwell,* 81 Ky. 295; *Marks v. Baker,* 28 Minn. 162; *Palmer v. Concord,* 48 N. H. 211; Cooley on Torts, 217; *The State v. Balch,* 31 Kas. 465.

The court did not give a sufficiently clear, explicit or applicable instruction with reference to the publication of articles concerning candidates for office, and to what extent they are privileged. As to the publication of judicial proceedings it did, but not concerning the publication of articles on candidates.

We do not believe that the information states facts sufficient to constitute an offense against the laws of the state of Kansas. When words admit of two constructions, the one actionable and the other not actionable, and the pleader fails to point the language to the actionable meaning, courts have refused to put the actionable meaning on the language, supposing that if the language had such a meaning the pleader would have pointed it out. The plaintiff must allege in what sense he desires the court and jury to consider the language used. "Unless he does so, he deprives the defendant of the right to traverse the sense which the plaintiff imputes and the language of which he complains." Town. Sl. & Lib., § 142. See, also, Town. Sl. & Lib., § 141; Folk. St. Sl., § 757.

We also contend that the information is indefinite; and also that instructions 7, 8, 10, 11 and 12 are misleading, and do not correctly state the law.

*John T. Little,* attorney general, *O. C. Jennings,* county attorney, and *Valentine, Harkness & Godard,* for The State:

There was certainly no error in the refusal of the court below to permit the defendant, as a witness, to answer the question propounded by his attorneys. His own *secret* purpose or motive for writing and publishing that libelous and defamatory article can certainly be no defense for the wrong he committed. Besides, he was permitted to testify fully with regard to when, where and how he obtained his information with respect to Oliver's testimony and the thieves, boodlers and robbers referred to, and to testify to all the facts and circumstances that might have any relevancy to the case, and to everything that was said or done at the time of his preparing his article for publication and in procuring its publication. Indeed, the only thing excluded was his secret purpose or motive in preparing his said article and having it published. 13 Am. & Eng. Encyc. of Law, pp. 385, 386. See, also, 2 Bish. New Cr. Law, §§ 922, 923; Newell, Def., Sl. & Lib., p. 301, § 22; Odg. Lib., pp. * 264, * 265; 2 Whar. Cr. Law, § 1654.

Counsel for the defendant claim "that the court [below] did not give a sufficiently clear, explicit or applicable instruction with reference to the publication of articles concerning candidates for office, and to what extent they are privileged." There are at least two good answers to this claim of error: (1) The court did give ample instructions upon this subject, and instructions that were fully as favorable to the defendant as he had any right to ask. (2) The court was not asked to give any other or additional instructions upon this subject or upon any other subject. There is still another good answer to the defendant's contention. The libelous article had nothing to do with Larabee's candidacy or qualifications for the office for which he was a candidate; nothing to do with his qualifications

to vote for Benjamin Harrison for president if he ( Larabee) had been elected a presidential elector. See, with respect to libel upon candidates for office, 13 Am. & Eng. Encyc. of Law, 319, 421, especially second paragraph, and note 2.

Counsel for the appellant claim that the information upon which the defendant was tried, convicted and sentenced is not sufficient. There is really no necessity for our saying anything upon this subject. See § 270 of the crimes act, Gen. Stat. of 1889, ¶ 2444; Newell, Def., Sl. & Lib., p. 939, § 3. The sufficiency of the information in this case was challenged in the court below by a motion to quash, and also by a motion in arrest of judgment. The only grounds upon which a motion in arrest of judgment can be made are, *first*, that the court has "no legal authority to inquire into the offense charged, by reason of it not being within the jurisdiction of the court; *second*, that the facts stated do not constitute a public offense." Crim. Code, § 277. See, also, as to the sufficiency of informations when attacked, the case of *The State v. Morrison*, 46 Kas, 679, 681–684.

It is claimed that the court below erred in giving certain instructions to the jury, to wit, instructions Nos. 7, 8, 10, 11, 12. In all criminal prosecutions in this state for libel, the jury have the right to determine for themselves all questions of law and fact. Crimes Act, § 275; Gen. Stat. of 1889, ¶ 2449; *The State v. Verry*, 36 Kas. 416. Hence it would seem to be immaterial whether the instructions of the court were strictly correct or not. But they were substantially correct, and certainly no injustice was done to the defendant by the giving of them. Taking the whole of them together, they were more favorable to the defendant than to the state. See, also, in addition to the foregoing cases, the following: *Castle v. Houston*, 19 Kas. 417; *The State v. Wait*, 44 id. 310.

The opinion of the court was delivered by

HORTON, C. J.: On January 25, 1891, and prior thereto, the county treasurer's office, with the other public offices of Stafford county, were situated in the courthouse in St. John,

in that county; and on the night of that day the treasurer's office was forcibly entered, and moneys, books, etc., stolen. Some time afterward the county attorney of Stafford county commenced criminal prosecutions against several persons who were suspected of committing the offense, and among others against Joseph Clyne and B. A. Webber. At the time of the burglary and larceny, and before and since, Joseph Clyne and Frank S. Larabee both resided at Stafford. Webber's case was taken on change of venue to Reno county, and tried at Hutchinson, before the district court of that county. The jury, however, disagreed. On the trial, James K. Oliver became state's evidence and testified in the case. On September 21, 1892, while the case was on trial, Clyne went from Stafford to Hutchinson, and there had conversations with Webber and Landes and others, with regard to Oliver's testimony, and in the evening of the same day returned to his home. The next morning he went to the printing office where *The People's Paper* was published. Earl G. Nettleton was editor, publisher, and proprietor. His wife, Allie M. Nettleton, and his brother, Adelbert M. Nettleton, assisted him. Clyne had no connection with the newspaper, and at that time the Nettletons were strangers to him. He wrote and procured to be published the following article as an editorial in *The People's Paper* on September 22, 1892, at Stafford:

"THIEVES FALL OUT.

"The case against the Stafford county boodlers is now occupying the attention of Judge Martin's court, at Hutchinson. Oliver, one of the accused, has turned state's evidence, and gave the whole robbery away. He testified on oath that he went to Frank Larabee and told him the courthouse was to be robbed, and if he had any money there to get it out at once. It was further developed in the evidence, that Larabee went to the treasurer and drew a large sum of money a day or two before the robbery. We understand Larabee corroborated the above evidence, and admitted being posted as to the time the robbery would occur."

Upon the trial, Clyne, who was a witness in his own behalf, was asked: "I wish you would state the purpose which

actuated you to and the motive you had in view in writing that article for publication." This was objected to, and the objection was sustained. It is now insisted that material error was committed thereby. It appears that Frank S. Larabee was, at the time of the publication, a candidate for the office of presidential elector on the republican ticket. It is claimed that the publication was one of privilege on that account, and that the motive or intent of Clyne, in writing and publishing the article complained of, ought to have gone to the jury. Clyne was permitted to testify fully with regard to when, where and how he obtained his information with respect to Oliver's testimony, and the thieves, boodlers and robbers referred to, and as to all the facts and circumstances that might have any relevancy to the case, and to everything that was said or done at the time of his preparing his article for publication, and in procuring its publication. He was also permitted to give the following evidence:

"Ques. Now, I ask you to state, at the time that article was written and furnished to the publishers of the paper, what was your judgment and belief as to its truthfulness. Ans. I believed it was true.

"Q. Now, you stated that the time you wrote that article you believed it to be true? A. Yes, sir.

"Q. What made you believe it was true? A. The information that I had procured at Hutchinson, together with the information that Mr. Oliver gave me before that.

"Q. The information which you procured at Hutchinson from the persons that you told the Nettletons had told you about it? A. From the attorney, and from Mr. Webber, and from Mr. Landes, and from the conversation that I had with Mr. Oliver, and from the fact that I investigated the books and found that Mr. Larabee had drawn money out of the treasury — the county treasury — as Oliver told me he would.

"Q. I believe you stated you had known Mr. Larabee for five or six years? A. Five years I put it, I think.

"Q. Have you known him quite well? A. During that length of time, yes, sir.

"Q. What have been your relations with him for the last two or three years — friendly, or otherwise? A. Well, they haven't been very friendly.

"Q. Do you speak as you meet? A. No.
"Q. How long has that condition of affairs existed? A. Since he sued me for killing his dog — for $250."

Clyne also testified, upon cross-examination, as follows:

"Q. Did you say to Mr. Nettleton, or Mr. Nettleton say to you, about the time you were leaving the office, not to let it be known who wrote the article? A. Yes, I believe I did. I told him I did n't want my name signed to it.
"Q. Why did n't you want your name signed to it? A. Oh, people that write for papers do n't generally do that.
"Q. Are you a newspaper correspondent? A. I was starting out in the business then.
"Q. That was your maiden effort, then? A. Yes.
"Q. Have you had any experience in that line since? A. No, I have not written very much since.
"Q. In giving your reason for not signing the article, what reason did you have for not wanting it known who wrote it? A. I can't give any reason, only I did n't want my name put to a piece that I would put in a paper. I told Mr. Nettleton that the article was true, and that he need fear no trouble."

Under the evidence disclosed, we think the court committed no error prejudicial to the defendant in sustaining the objection to the question proposed. "When a man intentionally and personally publishes of another what is libelous, by the general doctrine he is held to have malice in law against him, whatever the motive in fact." (2 Bish. New Crim. L., § 922; 13 Am. & Eng. Encyc. of Law, 385, 386; Newell, Def. 301, ¶ 22; Odg. Lib. 264, 265; 2 Whar. Cr. Law, ¶ 1654.)

2. Publication—
motive in writing—evidence.

1. Libel—malice—motive.

It is next insisted that the court did not give sufficiently clear, explicit or applicable instructions with reference to the publication of the article concerning candidates for office, and to what extent they are privileged. An examination of all of the instructions shows that they were very favorable to the defendant, and sufficiently so even if the article published

2—53 KAS.

were privileged.    Among other things, the court charged the jury that

"The writing and publishing the article complained of in the information in this case, with which the defendant, Joseph Clyne, is charged, is not seriously controverted, but it is by the defendant admitted to have been by him written and furnished *The People's Paper* for publication.    The defendant, however, denies that the article was designed or intended to be scandalous or defamatory of anyone.    He claims that in preparing the same for publication he was actuated by pure motives, and designed only to impart information to the citizens of Stafford county who should read the paper of and concerning matters of deep public and common interest to such citizens.    The article mentions Frank Larabee, who the defendant claims to have been, and who is admitted to have been, at the date of writing and publishing thereof, a candidate upon the republican ticket for the office of presidential elector.    It also mentions the judicial proceedings then pending in the district court of Reno county, which had grown out of and was pertaining to an alleged robbery and larceny connected with the funds, books and papers belonging to the citizens of Stafford county in connection with the office of county treasurer of that county.    You are instructed, as a matter of law, that if the defendant, in writing the article, and preparing the same for publication, was moved thereunto by an honest purpose to inform the electors and the citizens generally of the conduct of the parties charged with being implicated in such unlawful interference with said treasurer's office and the contents thereof, or as to the qualifications and moral character of a candidate seeking the votes of electors for the office aforesaid, or for the furtherance of both such purposes, that said article and communication was and is a privileged communication; and that if the defendant was guided by and based his actions upon information and belief that the matters and things therein stated were substantially true, the same was not libelous in law, but that the defendant should and must be acquitted, unless you find from the evidence beyond a reasonable doubt that he was actuated by actual malice in so doing."

Again, the court charged the jury as follows:

"One may, in good faith, publish what he honestly believes to be the truth, which is essential to the protection of his in-

terest, or interests of other persons to whom he makes the publication, and thereby commits no offense, although the matters published by him are not true in fact, and are injurious to the character of others. Each and every voter is interested in the qualifications and moral character of candidates for public office. If the defendant, in framing for publication that article, was mistaken as to the truth of the same or some parts thereof, and they are in fact derogatory to the character of the parties, or any of them, therein mentioned or referred to, yet if he at the time believed the matters to be true, he thereby committed no criminal offense. Unless you find that the same was done through actual malice, you should acquit."

It is also insisted that the information is not sufficient or definite. We think it is sufficiently certain to sustain the charge alleged, and that, within the provisions of the statute, it is libelous. Section 270 of the crimes act reads:

3. Information, sufficient.

"A libel is the malicious defamation of a person made public by any printing, writing, sign, picture, representation or effigy tending to provoke him to wrath, or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence and social intercourse." (*Castle v. Houston,* 19 Kas. 417; *The State v. Brady,* 44 id. 435; *The State v. Wait,* 44 id. 310; *The State v. Morrison,* 46 id. 679, and cases cited.

We have considered the other allegations of error discussed in the briefs, but we do not think it necessary to comment thereon. The defamatory matter in the article published appears to have been wholly false. Frank S. Larabee was not referred to in the article as a candidate for any office, and the attention of the readers of the paper was not called to that fact by anything stated in the libelous article. We think the conviction is sustained by the record.

The judgment will be affirmed.

All the Justices concurring.