## WALLACE A. PARKER *vs.* REPUBLICAN COMPANY.

Suffolk.    March 24, 1902. — May 21, 1902.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Libel.  Damages.  Evidence.*

In an action for libel, the question, whether an account in a newspaper of a complaint and warrant and the trial thereon in a police court is a fair report of a judicial proceeding, assuming that these are judicial proceedings within the meaning of the law of privileged communications, is for the jury, as it depends in part upon oral testimony.

In an action for libel the plaintiff waived all damages from the date of the trial of another action which he brought against another defendant for the publication of substantially the same libel. The defendant offered in evidence a certified copy of the writ and declaration in the other action. The evidence was excluded. *Held,* that the exclusion was right. The declaration while on file in the clerk's office was not open to public inspection, and its mere filing should not be allowed to mitigate the damages recoverable in an independent suit.

In an action by a physician for a libel repeating a charge that the plaintiff had committed an assault on a female patient after rendering her partially insensible by a drug, evidence is admissible, tending to show the amount of the plaintiff's pro-

fessional income before and after the publication of the alleged libel, and the conduct toward him of his patients and acquaintances before and after such publication, and also his own feelings.

TORT FOR LIBEL, being one of five actions by the same plaintiff against different newspapers which were tried together by an order of a judge of the Superior Court under St. 1897, c. 525, § 3. Writ dated January 5, 1898.

At the trial in the Superior Court before *Richardson*, J., the plaintiff relied only on publications of January 7 and 9, 1896. It appeared that at the time of the publications the plaintiff was a physician living at West Springfield and practising in Holyoke.

The publication of January 7, 1896, was as follows: "Threatened Doctor's Life. A Broker Arrested on Complaint of Dr. Parker. Amenzo Griffith, a broker, who lives at 115 Florence Street, was arrested yesterday afternoon by the police on a warrant sworn out in Holyoke by Dr. Wallace Parker, of West Springfield. Dr. Parker, who has an office in Holyoke, charges Mr. Griffith with threatening to do him bodily harm and the case, so far as the details of it have reached the police, is a peculiar one. Some time ago Dr. Parker operated upon Mrs. Griffith, she having had some trouble with her nose. Mr. Griffith asserts that while his wife was yet under the influence of chloroform she told him that Dr. Parker after he had reduced her to a state of partial insensibility by the use of the drug, committed an assault upon her. This statement of his wife so incensed Mr. Griffith, that last week he wrote the doctor a letter saying that if he found out the statements of his wife were true, he would kill him on sight. It appears that Dr. Parker was alarmed by this statement and considered his life in danger, so he appealed to Captain Beecklin yesterday and wanted to have Mr. Griffith placed under arrest on the ground that he was unbalanced mentally. The captain told him that he could not take this step without a judgment from the Probate Court, and Dr. Parker decided to swear out the warrant for the arrest of Mr. Griffith on the charge mentioned. Mr. Griffith at once furnished bail, and the case will be brought up in the Police Court this morning."

The publication of January 9, 1896, was as follows: "Griffith

Must Keep the Peace.  The trial of Amenzo Griffith of this city was held before Judge Pearsons yesterday morning, and he was put under bonds to keep the peace for six months.  The trial was on the complaint of Dr. Parker of West Springfield, that Griffith had in various manners threatened to kill him, and Parker feared that he would carry out his threats.  The trial was a short one, and the defendant did not take the stand.  He did not deny or confess that he had used threatening language toward Parker.  Dr. Rhodes of this city testified that Griffith had said in his hearing that he would kill Parker on sight.  He made this statement in Parker's office Saturday morning.  Mrs. Cox, of Holyoke, said that a man whom she could not identify, had told her in Dr. Parker's office that he would kill Parker, and had in addition told her the reason why.  Another witness testified that the man who had talked to Mrs. Cox was Griffith. A letter which Parker had received was introduced, and Mr. Jordan of this city testified that it was in the handwriting of Griffith.  It was not read in full in Court, but it stated that Mrs. Griffith had made certain charges against Parker while in a delirious state, and that if she repeated them when she recovered her health, Griffith would certainly shoot Parker.  Judge Pearsons said in deciding the case that a man who would make such threats on the strength of an insane person's statements, was not fit to be at large, and he did not consider that Griffith had any warrant for them.  He therefore ordered him to furnish bonds to keep the peace for six months."

The defendant's evidence tended to prove the truth of the matter set forth in the publications, including the truth of the charge that the plaintiff had assaulted the wife of Amenzo Griffith while he was operating upon her and while she was under the influence of a drug.  The plaintiff's evidence tended to contradict all this evidence of the defendant.

The defendant introduced evidence, tending to show that the publication of January 7, 1896, was authorized and assented to by the plaintiff, and that both of the publications were fair reports of judicial proceedings.

The defendant offered in evidence a certified copy of the writ and declaration in the case of *Wallace A. Parker* v. *Amenzo Griffith,* in the Superior Court for the County of Hampden.

The plaintiff waived all damages after March 19, 1897, the date of the first trial of the case of *Wallace A. Parker* v. *Amenzo Griffith*. Thereupon the judge excluded the copy, and the defendant excepted. A copy of the whole record in that case was also offered and excluded.

At the close of the evidence, the defendant requested the judge to give the following instructions, as well as others which were waived :

1. Upon the pleadings and evidence the plaintiff is not entitled to recover.

2. The alleged libel published in the Springfield Republican of January 9, 1896, was a fair report of judicial proceedings and fair comment thereon, and the plaintiff cannot recover.

7. The alleged libellous publication in the Springfield Republican of January 9, 1896, is a fair report of judicial proceedings and fair comment thereon, and the plaintiff cannot recover.

9. The plaintiff is not entitled to recover by reason of the publication in the Springfield Republican of the alleged libellous article of January 9, 1896.

The judge refused to give these instructions, leaving the questions of whether the articles contained a fair report of judicial proceedings and fair comment thereon to the jury.

The jury returned a verdict for the plaintiff in the sum of $1,645; and the defendant alleged exceptions.

*J. E. Cotter, J. B. Carroll & W. H. McClintock*, for the defendant, submitted a brief.

*W. R. Bigelow*, for the plaintiff.

BARKER, J. 1. The publications of January 7 and 9 were admitted at the trial to have been made by the defendant, and it is not contended that the language was not defamatory. The defences of the truth of the charges and that the plaintiff authorized and consented to the publication of January 7, raised questions of fact upon which the evidence was conflicting, and which were for the jury. The remaining defence of privilege, that the publications were fair reports of judicial proceedings, was also for the jury. If we should assume that the complaint and warrant of January 6 was a judicial proceeding within the meaning of the law of privileged communications whether the publication of January 7 relating to that complaint and the publication of

January 9 relating to the trial upon it, were fair reports of judicial proceedings, depended in each instance in part upon oral testimony the truth of which was a question for the jury, and it was for them to say whether the defence was established. *Wright* v. *Lothrop*, 149 Mass. 385, 390. *Howland* v. *Blake Manuf. Co.* 156 Mass. 543, 572. These considerations show that the exceptions to the refusal to give the first, second, seventh and ninth requests, and to the action of the judge in leaving to the jury the questions whether the articles contained a fair report of judicial proceedings and fair comment thereon were not well taken. The action of the judge was at least sufficiently favorable to the defendant. The exceptions to the refusal to give the fifth and sixth requests are waived by the defendant's brief.

2. The defendant argues its exception to the exclusion of the writ and declaration in the case of *Parker* v. *Griffith*, and does not argue its exception to the exclusion of the record of that action. The writ was sued out on January 7 and the declaration filed on February 3, and the first trial was on March 19, 1897. The plaintiff in the trial of the case at bar waived all damages from that date. It was not until that date that the declaration in *Parker* v. *Griffith* could have been given to the public and then only as a part of a fair report of the trial, nor was the declaration itself open to public inspection. *Cowley* v. *Pulsifer*, 137 Mass. 392, 396. To hold that the victim of a libel by merely filing a declaration in legal proceedings for redress mitigates the damages recoverable by himself from a third person who has independently published substantially the same libel would be a perversion of justice.

3. We see no error in the admission of the testimony of the plaintiff tending to show the amount of his professional income before and after the publication of the alleged libels, the conduct and treatment of his patients and acquaintances or his own feelings. The declaration alleged that he was a physician, and that he had been caused annoyance, and had been disgraced and subjected to loss of reputation and of business and greatly damaged in his profession as a physician and had suffered in his credit and good name. The evidence excepted to tended to prove these allegations, and the form of the questions was care-

fully guarded by the presiding judge, and all the elements of damage were " natural consequences of a manifestly injurious act." *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 245.

*Exceptions overruled.*