## COBB v. OKLAHOMA PUBLISHING CO.

No. 3180.    Opinion Filed February 17, 1914.

Rehearing Denied June 16, 1914.

1.    **LIBEL AND SLANDER—Libelous Publication—Privilege—Question of Law.**  In an action for damages for a libelous publication, where there is no dispute as to the circumstances under which the publication was made, that is, where there is no dispute as to what the publication was, what it was about and who made it, or where the language in the publication was plain and unambiguous, it is a question of law for the court to determine whether or not such publication was privileged.

2.    **SAME—"Privileged Publication."**   Under subdivision 3 of section 2340, Comp. Laws 1909 (section 2381, Rev. Laws 1910), a "privileged publication" is one made by a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticised.

3.    **SAME—Question of Fact—Malice.**  In an action for libel for publishing a report of any proceedings authorized by statute to be published, where there are controverted issues as to whether such report was a fair and true one, and whether such publication taken as a whole was made with malicious intent, and whether or not in such publication the plaintiff is falsely charged with crime, it is not error for the court to submit such issues to the jury.

4.    **SAME—Evidence.**   Where a publication contains only excerpts from a brief in a judicial proceeding and the issue is raised as to whether such publication was a fair and true report of such proceedings, it is not error to admit the entire brief in evidence.

5.    **SAME—Publication—Condensed Reports of Judicial Proceedings.**  The published report of a proceeding authorized by law to be made need not be verbatim, nor need it set out such proceedings in extenso, in order to be privileged, but may be abridged or condensed, provided it is not unfair to the party complaining.

6.    **SAME—Evidence—Court Records.**  Where there is an issue as to whether the complaining party has been falsely accused of crime by the report of a judicial proceeding, it is not error to admit in evidence the indictment or other court records which tend to show the truth of the charge.

7.    **SAME—Malicious Intent.**  Upon the issue as to whether a publication was maliciously made, it is not error to permit the party making same to testify that it was made without malice toward the complaining party.

8.    APPEAL AND ERROR.—Cross-Examination of Witnesses—Discretion of Trial Court. The limit to which a witness may be cross-examined for the purpose of testing his credibility is largely within the discretion of the trial court, and such discretion will not be disturbed on appeal unless it clearly appears to have been abused.

(Syllabus by Harrison, C.)

Error from District Court, Oklahoma County;
George W. Clark, Judge.

Action by T. S. Cobb against the Oklahoma Publishing Company, a corporation, for libel. Judgment for defendant, and plaintiff brings error. Affirmed.

*Kistler, McAdams & Haskell* and *Crump & Fowler,* for plaintiff in error.

*Burwell, Crockett & Johnson,* for defendant in error.

Opinion by HARRISON, C. This was an action by T. S. Cobb against the Oklahoma Publishing Company for libel in the publication of an article under the following headlines:

"Protection Against Guardians Sought.—Indian Minors Being Systematically Robbed In Many Instances.—Aid of Legislature Will be Invoked.—Some Charges Already Preferred."

The article in question contained a rather lengthy comment upon conditions claimed to be existing on the east side of the state relative to Indian minors being defrauded of their allotments, giving a number of instances in which fraud and graft was claimed to have been perpetrated, mentioning as one instance the proceedings instituted by the Attorney General against T. S. Cobb to remove him from office for fraud, and publishing certain excerpts from the Attorney General's brief, and concluding with some independent comments upon the Attorney General's charges against the plaintiff. The plaintiff brought suit for damages alleged to have been sustained by reason of such libelous publication, and the cause was tried in May, 1911, resulting in a verdict and judgment in favor of defendant publishing company, from which plaintiff appeals upon thirteen assignments of error.

The questions raised in these assignments are properly determined under three heads, viz., first, errors in the admission

and rejection of testimony; second, errors in the instruction given by the court, and in refusing to give certain instructions offered by the plaintiff in error; third, errors in overruling motion for new trial, which included other errors of law occurring at the trial and duly excepted to.

The decisive question involved is, whether the alleged libelous publication was privileged, which of course, is conditioned upon, first, whether the purported excerpts from the Attorney General's brief were a fair and true report; second, whether the publication as a whole was made with malicious intent; third, whether plaintiff, independent of the excerpts from the Attorney General's brief, had been falsely charged with a crime by defendant. This being true, and the plaintiff's right of recovery depending upon the determination of these questions, we will first look to the instructions of the court in order to ascertain whether the jury was properly instructed as to the law involved, as from the court's charge we are enabled to ascertain what he conceived the law to be on the material issues, and are thereby better enabled to determine whether error was committed in the admission and rejection of testimony, and in overruling the motion for new trial, which included other errors of law occurring at the trial.

That portion of the publication which referred directly to plaintiff Cobb was a purported excerpt from the brief of the Attorney General filed in the Supreme Court in an action to remove Cobb from the office of county judge of Seminole county for an alleged conspiracy to defraud Indian minors of their allotted lands. The court construed this to be a privileged publication, that is, under the conditions prescribed by statute, and so instructed the jury. The question then is, whether the court erred in so doing. The rule in such cases is, that where there is no dispute as to the circumstances under which a publication is made, that is, where there is no dispute as to what the publication was, what it was about, and who made it, or where the language in the publication is plain and unambiguous, it is a question of law for the court to determine whether or not such publication was privileged. This rule is announced in 25 Cyc. 542, 547; 18 Am. & Eng. (2d Ed.) 1050, and is supported by decisions from most

of the states, and from the Supreme Court of the United States. Besides, the rule in substance was announced by this court in *Tuohy v. Halsel,* 35 Okla. 61, 128 Pac. 126, and *Spencer v. Mennick,* 41 Okla. 613, 139 Pac. 130. In determining this question of law the court was guided by our statute on libel and slander which reads as follows:

"A privileged publication is one made: First. In any legislative or judicial proceeding or any other proceeding authorized by law; second, in the proper discharge of an official duty; third, by a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticised. * * * " (Section 2340, Comp. Laws 1909 ·[section 2381, Rev. Laws 1910].)

Also, section 2348, Comp. Laws 1909 (section 2386, Rev. Laws 1910), which reads as follows:

"No editor or proprietor of any newspaper, shall be liable to prosecution for a fair and true report of any judicial, legislative or other public official proceedings except upon proof of malice in making such report, and in making such report of public official proceedings, malice shall not be implied from publication; but libelous remarks connected with matter privileged under the last section, shall not be privileged by reason of their being connected therewith."

The latter section above quoted, it is true, relates to criminal actions for libel or slander, but being a part of the legislative act on the subject, its provisions are useful in revealing the legislative intent as to what should constitute privileged publications, and viewing the intention of the Legislature through the provisions of both sections, it is obvious that any publication coming clearly within the third subdivision of section 2340, Comp. Laws 1909 (section 2381, Rev. Laws 1910), is privileged; provided, of course, it be a fair and true report of the proceedings attempted to be reported, and not be maliciously made, and does not falsely impute crime to some one independently of such report. The portion of the publication in question which refers

directly to plaintiff and which constitutes the purported excerpts from the Attorney General's brief, is as follows:

"In his ouster proceedings against T. S. Cobb, county judge of Seminole county, Attorney General West details at some length the methods alleged to have been pursued by this probate court in robbing many Seminole Indian minors of their lands, and which illustrates well the conditions that exist elsewhere when the probate court and 'professional guardian' are in an alliance, for bad."

West's Charges.

" 'The investigation of this defendant's official acts,' says Attorney General West (beginning on page 4 of his brief filed in the Supreme Court in the case of the *State of Oklahoma ex rel., etc., v. T. S. Cobb, County Judge of Seminole County, etc.*), 'proved a conspiracy existing between Judge Cobb and certain other individuals of Seminole county, to wit: H. T. King, J. S. Barham, and E. E. Jayne, who, in connivance and collusion with each other, evolved and carried out an extensive and systematic plan to deprive, in a general and wholesale way, many of the minor Seminoles and freedmen of their inherited lands; by having one of their coterie, to wit, H. T. King, a white man, make application for the appointment of himself as guardian of a particular minor, perhaps personally unknown to him, which application without notice to the minor or his friends was granted, and letters of guardianship to the said King, granted by Judge Cobb; the same trio of appraisers (if appraisers were used) were usually appointed and uniformly appraised the lands at grossly inadequate sums, and far below their actual or fair market value. Orders of sale were granted, and the lands advertised and sold at public sale, being usually bought in by Barham at from one-fifth to one-seventh of their true value; these sales were confirmed by Judge Cobb, and the guardian's deed executed.' "

The publication of the foregoing extract comes clearly within the third subdivision of our statute, and was a privileged publication, provided it be a fair and true report, not maliciously made, and did not, by independent comment, falsely impute crime to plaintiff. But, as the article in question included not only the extract above, but included also a general and rather lengthy comment on alleged conditions existing on the east side of the state as to minor Indians being defrauded of their allotments, as well as some direct comment upon the particular proceedings

against Judge T. S. Cobb, the issue arose as to whether the conditions imposed by statute had been violated, and out of such issue arose the questions, whether the report was fair, whether the publication taken as a whole was malicious, and whether the plaintiff was falsely accused of crime. These were issues of fact to be determined from the evidence by the jury.

"Where the report is a verbatim account of what took place at the trial, and differs so little that no reasonable man could say that what was omitted could affect the minds of the jury, it is the duty of the court to pronounce the report privileged. But if the question of the fairness of the report is capable of different conclusions, the question of privilege is for the jury." (18 Am. & Eng. [2d Ed.] 1045, and authorities cited under note 7.)

Also, *Parker v. Republican Pub. Co.*, 181 Mass. 392, 63 N. E. 931 ; *Wilman v. Press Pub. Co.*, 63 N. Y. Supp. 515 ; *American Pub. Co. v. Gamble*, 115 Tenn. 663, 90 S. W. 1005 ; *Wilcox v. Moore*, 69 Minn. 49, 71 N. W. 917 ; *Fay v. Harrington*, 176 Mass. 270, 57 N. E. 369 ; *Merriweather v. George Knapp & Co.*, 211 Mo. 199, 109 S. W. 750, 16 L. R. A. (N. S.) 953, and notes; *Coleman v. MacLennan*, 78 Kan. 711, 98 Pac. 281, 20 L. R. A. (N. S.) 361 ; *Flynn v. Bolarsky*, 164 Mich. 513, 129 N. W. 674, 32 L. R. A. (N. S.) 740, and notes.

Likewise, the question of malice is generally a question of fact for the jury. 25 Cyc. 548, 549, and authorites cited in notes; 18 Am. & Eng. (2d Ed.) 1050, and notes.

And the rule is especially applicable under the issues raised by the pleadings and circumstances involved in the case at bar. Hence, the question here is whether such issues were fairly submitted to the jury in the court's charge.

In instructions 6 to 13, inclusive, the court submitted these issues to the jury. That is, the issues as to whether the published extract from the Attorney General's brief was a fair and true report of same, as to whether the newspaper article taken as a whole was maliciously made, and the issue as to whether the plaintiff Cobb was falsely charged with crime in such article, were all submitted to the jury in said instructions.

It is urged by plaintiff in error that the court erred in each of said instructions. But from an examination of the record

in order to ascertain the real issues involved, and the testimony in support of same, together with the charge of the court, we believe that all the material issues involved in the case were fairly and fully submitted to the jury in the court's charge. At least, we are strongly impressed with the belief that the instructions were altogether fair to the plaintiff. We are unable to see wherein the plaintiff could reasonably ask for a charge more fair to him.

It is also contended by plaintiff in error that the court erred in refusing to give certain instructions offered by him. But from an examination of the instructions offered by plaintiff in error, we find that the law applicable to the issues therein presented was fairly and fully submitted to the jury in the court's charge, and therefore find no error in the refusal to give the instructions submitted by plaintiff.

In this connection it might be as well to notice the assignment that the court erred in recalling the jury on its own motion, and that during a colloquy between the court and one of the jurors as to the meaning of certain instructions the court made the following remarks:

"It don't make any difference if Attorney General West told a nefarious lie about it. It was a judicial proceeding, and the statute says that a paper may publish those proceedings, provided it gives a fair report of those proceedings and comments fairly upon what they publish."

.. It appears from the record that the jury, after having retired for deliberation, returned, by permission, and asked the court for further explanation on certain phases of the case; that after they had returned to their jury room, the court, being desirous of further examining the instructions or the language of some paragraphs of same, recalled the jury on its own motion, at which time the above remarks were made. We are unable to see wherein such remarks could have materially prejudiced the rights of plaintiff, for, while they may not be couched altogether in classic legal phraseology, they nevertheless correctly state the law. The truth or falsity of the Attorney General's argument in his

brief had nothing whatever to do with the question whether or not a fair and true report of same was made, nor the question whether such report was made with malicious intent. Plaintiff in error having failed to point out wherein his rights were prejudiced, we, being unable to see wherein they could have been prejudiced, see no reversible error under this assignment.

Having determined the position taken by the trial court as to the law of the case, we will now examine the assignments of error as to the admission and rejection of evidence. It is contended by plaintiff in error that the court erred in admitting in evidence the entire brief of the Attorney General. On this contention we cannot agree with plaintiff in error. If the published excerpt from the Attorney General's brief was a fair and true report of same, then the publication was privileged under our statutes, and the question whether it was a fair report arose from the fact that not all the Attorney General's brief was published. This, however, was a material issue of fact to be determined by the jury, and we know of no more satisfactory way by which such fact could be determined than by admitting the brief in evidence, so that by comparing the brief with the published excerpt the jury might be enabled to determine whether or not the publication was a fair and true report, and inasmuch as they returned a verdict in favor of defendant, they must have determined that such report was a fair and true one. And as to this phase of the case we cannot say that the verdict was contrary to law or contrary to the evidence. The law is that a report of this character need not be verbatim, nor need it contain all the proceedings. It may be abridged or condensed, but it must not be partial or garbled. Yet, while it need not state all that occurred, *in extenso*, a publisher cannot claim immunity if the facts which tell against the libeled party are selected and those which tell in his favor are omitted. See Starkey on Slander, 227; Odgers on Libel and Slander, 316; 18 Am. & Eng. (2d Ed.) 1050; 25 Cyc., title "Libel and Slander." Neither can we say that the verdict in this regard was contrary to the evidence, because the brief of the Attorney General discloses many statements and arguments, and much matter that might be far more detrimental to plaintiff's

character and name than the portion of the brief which is published, and by a comparison of the brief with the published extract it is obvious that no unfairness in this regard was done to plaintiff in the publication.

Another contention is that the court erred in permitting the witness R. E. Stafford, editor of the defendant paper, to testify that the publication was made in good faith and without malice. The issue of malice was made by plaintiff himself. Plaintiff was, therefore, permitted to show malicious intent by any competent testimony. See 25 Cyc. 584. And it necessarily followed that defendant should be permitted to disprove malice by any competent testimony which tended to do so. 25 Cyc. 584, and authorities cited in notes. Also *State v. Klein*, 53 Kan. 8, 35 Pac. 789. The question of malice was before the jury for determination, submitted under the court's instructions upon plaintiff's theory of the case. They were, therefore, entitled to have the entire publication, together with any competent testimony either tending to prove or disprove malice, and they having determined such issue from the entire article considered as a whole, and from all the evidence submitted, we see no reason for disturbing the verdict in this regard.

Another contention is made that the court erred in admitting in evidence an indictment returned by the grand jury of Seminole county against plaintiff, and also erred in the admission of other records of the probate court proceedings in the estates of minor Indians. This contention is based upon the rule that, where a party is being tried for a definite offense, evidence of other specific acts or crimes is inadmissible for the purpose of proving the crime for which he stands charged. But this rule, sound and wholesome as it is, is wholly inapplicable to the case at bar. The reason is plain. The plaintiff was not on trial for a particular offense. He was not on trial at all; but was prosecuting the defendant for falsely charging him with a general system of defrauding Indian minors. This being true, and defendant being allowed by statute to show the truth of the charge, then, certainly, any specific acts or records coming within and tending to prove a general system of fraud, were competent

to prove the truth of the publication, and the rule invoked by plaintiff is, therefore, inapplicable. Besides, this issue was submitted to the jury upon plaintiff's own theory of the case, and upon such theory the court submitted to the jury the issue as to whether or not the publication in question falsely imputed a crime to plaintiff. It was contended by plaintiff that certain comments following the excerpts from the Attorney General's brief were intended to charge plaintiff with fraud and official crime in handling the estates of minor Indians, such comments being:

"Relative to this particular case: Despite the fact that the Attorney General had the support of Governor Haskell and the Department of the Interior, he found much difficulty in indicting Judge Cobb. Public sentiment in Seminole county apparently stood back of the accused judge. Public demonstrations were held in his support; a secret organization, known as the Seminole County Protective Association, stood behind him; the grand jury was cajoled and threatened. Nevertheless, indictments were secured, but were dismissed by the district court before the Attorney General was ready for trial."

The question, then, for the jury was, first, whether such comments should be construed as charging plaintiff with the commission of a crime. Second, if so, whether such charge was true or false, and on the issue of the truth or falsity of such charge, it was certainly competent for defendant to show that it was true, and the indictment and probate records pertaining to minor Indians' estates, being the best evidence as to whether such charge of crime was true or false, were properly admitted in evidence.

It is contended that the court erred in permitting the plaintiff, on cross-examination by defendant, to be asked about certain transactions and dealings which plaintiff had had with certain Indians. But the record discloses that defendant was permitted by the court to cross-examine plaintiff in this regard only for the purpose of testing the credibility of the witness, and the court stated that it should not be considered for any other purpose by the jury. The plaintiff himself had put his character in issue by alleging that defendant had falsely charged him with crime, and having taken the stand in his own behalf in this regard, it was not error to permit him to be cross-examined as to any

transactions or court records pertaining to the subject or dealings with the Indians which plaintiff claimed was referred to by defendant in the article in question. Besides, the rules of evidence allow great scope in cross-examinations for the purpose of testing the credibility of the witness.

"The limits within which either party may cross-examine upon matters not strictly relevant, but which affect the credibility of the evidence, is largely discretionary. * * * Questions put to the witness for the purpose of ascertaining his relations, business, social or otherwise, with the accused and his state of mind, whether hostile or friendly toward him, are unobjectionable. * * * The rule under which evidence of collateral facts is excluded during the direct examination is not applied with strictness to the cross-examination. The theory upon which the latter is conducted, is, that its primary object is the ascertainment of truth, not by eliciting positive evidence directly bearing on the facts, but by furnishing a means of testing the truthfulness and credibility of the witness." (Section 221, Underhill on Criminal Evidence, and authorities in support of the text.)

Also in 7 Enc. of Ev. 171; 40 Cyc. 2616; *State v. Greenburg* (Kan.) 53 Pac. 61; *Fowler v. State*, 8 Okla. Cr. 130, 126 Pac 831; *Crawford v. State*, 7 Okla. Cr. 711, 115 Pac. 278; *Terry v. State*, 1 Okla. Cr. 430, 122 Pac. 559.

Under the third and last group of errors may be considered the assignment that the verdict is not sustained by the evidence; that it is contrary to law, and that the court erred in overruling the motion for a new trial. But we cannot say as a matter of law that the evidence disclosed by the record fails to sustain the verdict. Nor can we say upon the whole that the verdict is contrary to law. The law applicable to the facts and issues involved, we think, was fairly and fully given to the jury in the court's charge, and as a general proposition of legal liability under the entire record, we believe the verdict is in accord with the law, and, finding no other errors of law occurring at the trial which in our judgment would justify a reversal of the judgment, we think the motion for a new trial was properly overruled.

The judgment should, therefore, be affirmed.

By the Court: It is so ordered.