## TUOHY v. HALSELL.

No. 1266.   Opinion Filed November 26, 1912.

(128 Pac. 126.)

1.   **LIBEL AND SLANDER** — Privileged Communications — Malice. In the absence of anything showing malice, one is not guilty of libel who sends to the Department of Justice for use before a Senate committee an affidavit containing criminatory matter against one who has preferred charges against the qualification and fitness of another for office who has been thereto appointed by the President and whose name by him has been sent to the Senate for confirmation, pending which and before said committee said charges are being investigated, and that, too, although the testimony therein contained is not pertinent to the subject of inquiry before the committee.

2.   **SAME**—Qualified Privilege—Question for Court.   Evidence examined, and held, that the court did not err in holding the communication a qualified privilege and in taking the question of malice away from the jury.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*John J. Carney, Judge.*

Action by C. J. Tuohy against Oscar D. Halsell.   Judgment for defendant, and plaintiff brings error.   Affirmed.

*Flynn, Chambers & Lowe* and *Everest, Smith & Campbell,* for plaintiff in error.

*Burwell, Crockett & Johnson* and *J. W. Scothorn,* for defendant in error.

TURNER, C. J. This is an action for an alleged libel. The record discloses: That, prior to the time of making the alleged libelous affidavit by the defendant, the President of the United States had appointed and sent to the Senate for confirmation or rejection the name of John Embry to be United States attorney for the then territory of Oklahoma. That at the time said affidavit was made there were pending charges preferred by plaintiff against the qualification and fitness of said Embry for said office, and affidavits of plaintiff in support thereof had been submitted to the Department of Justice for use before the Senate committee having the charges under investigation. That testimony by affidavit was then being taken by examiners of the Department of Justice and assistant United States attorneys at Chandler and other places in Oklahoma to be transmitted to said Department and by it to the Senate committee for use as stated. That, for use in refuting the charges, said Embry, being authorized by the Senate committee and Department of Justice to take evidence in affidavit form anywhere in Oklahoma, pursuant thereto, on May 30, 1906, through counsel, secured from defendant for that purpose an affidavit which read:

"Territory of Oklahoma, Oklahoma County—ss.: Personally appeared Oscar Halsell, he being first duly sworn, on his oath says: That he is a member of the firm of the Williamson-Halsell-Frasier Company engaged in the wholesale grocery business at Oklahoma City, Guthrie, Shawnee and Chickasha, in Oklahoma and Indian Territory. That he is intimately acquainted with C. J. Tuohy, now a representative of Tootle-Wheeler & Motter of St. Joseph, Mo. That said C. J. Tuohy was in his employ at one time, and that he discharged the said Tuohy from his employ by reason of his dishonesty. That said Tuohy was not a trustworthy, creditable or reliable person, while in their employ. Oscar Halsell. Subscribed and sworn to before me this 30th day of May, 1906. A. J. Crahan, Notary Public. [Seal.] My commission expires Sept. 11, 1906."

That the same was duly transmitted to the Department of Justice and so used, whereupon, when so informed, plaintiff brought this suit. The defense is that the publication was privileged. At the close of all the testimony the court, being of opinion that it was one of qualified privilege and made without

malice, peremptorily instructed the jury to return a verdict for defendant, which was done, and judgment rendered and entered accordingly, and plaintiff brings the case here.

Assuming the same to contain criminatory matter, it seems that this is a privileged publication, made so by statute. Wilson's Rev. & Ann. St. 1903, sec. 2239, reads: "A privileged publication is one made: First, in any legislative or judicial proceeding or any other proceeding authorized by law"—which we take to mean one made in the course of any such proceeding. Chapter 130, sec. 1, of the St. of N. Y. (Acts 1854) makes privileged the publication in any newspaper "of any judicial, legislative or other public official proceedings" and "of any statement, * * * in the course of the same. * * *" As we can see, in comparing these statutes, no practical difference between "proceedings authorized by law" and "public official proceedings," it seems that both statutes were intended to cover the same field and the same kind of publications. In *Sanford v. Bennett*, 24 N. Y. 20, Denio, J., commenting on the New York statute, *supra*, said that the maxim of construction expressed in the term *noscitur a sociis* seemed to bear strong on the case, and that:

"I am persuaded that the transactions embraced within the purview of the statute are such as resemble judicial and legislative proceedings, such as transactions of administrative boards in which the subjects dealt with are liable to be considered, deliberated upon, discussed, and determined. It is to such proceedings only that the words, statements, speech, argument, or debate used in the act can be applied."

And in the syllabus:

"The statute relates only to statements made in judicial, legislative, or administrative bodies in execution of some public duty."

And so it seems that the affidavit complained of, taken to obviate the necessity of the personal appearance and testimony of defendant before the Senate committee, in a proceeding instituted pursuant to the inherent power of that body, and there used in evidence, falls squarely within the statute as a publication made, if not in a judicial or a legislative or administrative proceeding, was certainly made in the course of a proceeding authorized by

law and in and to a body clothed with quasi judicial powers, sitting in execution of a public duty.

No case can be found exactly in point, but in *Duncan v. Atchison, etc., Ry. Co. et al.,* 72 Fed. 808, 19 C. C. A. 202, the court said:

"Section 47 of the Civil Code of California declares that 'a privileged communication is one made   *   *   *   (2) in any legislative or judicial proceeding or in any other official proceeding authorized by law.'   In *Ball v. Rawles,* 93 Cal. 222, 236, 28 Pac. 937 [27 Am. St. Rep. 174], the Supreme Court, in construing this section, said: 'The effect of the provision is to make a complaint, in a court of justice which has jurisdiction of the offense charged, an absolute privilege, for which the complainant is not liable in a civil action. *Hollis c. Meaux,* 69 Cal. 625, 11 Pac. 248 [58 Am. Rep. 574].'   Tested by the provisions of this statute, the conclusion of law arrived at by the circuit court, 'that all of the matters and things herein complained of were and are privileged,' and the judgment entered thereon, were clearly correct; for, conceding that the Interstate Commerce Commission is not a court of civil jurisdiction, it is nevertheless manifest that the pleadings herein complained of were filed in an 'official proceeding authorized by law.' "

And in the syllabus:

"Alleged libelous statements contained in an answer filed in proceedings before the Interstate Commerce Commission are absolutely privileged, under the California statute, which declares a privileged communication to be 'one made   *   *   *   in any legislative or judicial proceeding, or in any other official proceeding authorized by law.' "

But let this be as it may, the communication or publication was a qualified privilege, as held by the trial court. This privilege "extends to all communications made *bona fide* upon a subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty, and to cases where the duty is not a legal one, but where it is of a moral or social character or imperfect obligation." 13 Am. & Eng. En. of Law, p. 411. Or, as stated in the syllabus in *Thomas S. Harrison v. Edwin Bush,* 5 E. & B., Q. B., 344:

"A communication made *bona fide* upon any subject-matter in which the party communicating has an interest, or in refer-

ence to which he had a duty to perform, is privileged, if made to a person having a corresponding interest or duty, although it contain criminatory matter which, without this privilege, would be slanderous and actionable. And this, though the duty be not a legal one; but only a moral or social duty of imperfect obligation."

In that case defendant was an elector of F. in the county of S. He, with other inhabitants of F., signed and transmitted to the home secretary a memorial complaining of the conduct of plaintiff, who was a justice of S., during a recent election, charging him with making speeches inciting a breach of the peace, and after reading the riot act with sending a man into the streets with orders to strike persons therein. It prayed the secretary to cause inquiry to be made touching the charges and, finding the same to be true, to recommend to the queen his removal from the commission. In a suit for libel the jury found that defendant acted without malice and in good faith. Lord Campbell, C. J., said·

"In the present case, little need be said to show that the communicator had both an interest and a duty in the subject-matter of the communication. Assuming that Dr. Harrison had misconducted himself as a magistrate in the matter alleged, all the electors and inhabitants of Frome had suffered a grievance by a magistrate having fomented the riot instead of quelling it, and having endangered instead of protecting life and property within the borough. They have an interest that they may not longer remain subject to the jurisdiction of a magistrate who so violates the law. Again, if Dr. Harrison had so misconducted himself as a magistrate, he had committed an offense; and it was the duty of those who witnessed it to try by all reasonable means in their power that it should be inquired into and punished. 'Duty,' in the proposed canon, cannot be confined to legal duties which may be enforced by indictment, action, or mandamus, but must include moral and social duties of imperfect obligation. * * * In this land of law and liberty all who are aggrieved may seek redress; and the alleged misconduct of any who are clothed with public authority may be brought to the notice of those who have the power and the duty to inquire in it, and to take steps which may prevent the repetition of it."

And so we say that, although the affidavit complained of is on its face addressed to no one, as the evidence is undisputed that it was intended for use before the committee and was by affiant restricted, at the time it was made, to that use—the same

was in effect nothing less than a communication by affiant on oath to the committee, and that, too, concerning a matter in which the qualification and fitness of another for office was being inquired into. It is needless to say that he not only had an interest in common with all good citizens in seeing that false charges were not sustained against the applicant, if innocent, but it was his duty to refute them if he could, and thus extend his aid to the committee in the work of securing for office one worthy of the trust. See, also *Bynam v. Collins,* 111 N. Y. 143, 19 N. E. 75, 2 L. R. A. 129, 7 Am. St. Rep. 726; *Finley v. Steele et al.,* 159 Mo. 299, 60 S. W. 108, 52 L. R. A. 852.

In *Posnett v. Marble,* 62 Vt. 481, 20 Atl. 813, 11 L. R. A. 162, 22 Am. St. Rep. 126, the statement complained of was made to a post-office inspector in reply to an inquiry by him in reference to an applicant for postmaster. The court said:

"The plaintiff was an applicant for the appointment to a public office. In view of her application, her character was a matter of public concern. The defendant was a member of the community immediately interested in the result of the application. Her conversation was with one who, she might naturally suppose, could prevent the appointment. The circumstances were such as to justify the defendant in communicating what she honestly belived as to the plaintiff's conduct and character. The selection of suitable persons for the performance of official service is essential to the interests of both the government and the citizen. These interests can be protected only by the communication of information and by free discussion concerning the fitness of applicants. It would tend to repress this necessary freedom, and would be a manifest injustice to the citizen, if communications of this character subjected the person making them to the payment of damages in the event of an honest mistake. * * * The occasion in question was not one of absolute privilege, but was so far privileged as to protect a communication made in good faith, and from an honest motive."

In *Cook v. Hill,* 3 Sandf. (N. Y.) 341, it was held that a memorial to the Postmaster General in reference to the business of his department, *e. g.,* the bidding for contracts which he was authorized to make by law, is a qualified privileged communication. In that case the memorial submitted proposals and protested against the execution of a contract to another, whose pro-

posals had been accepted, charging upon the latter, fraud and collusion with other bidders. In speaking of communications of qualified privilege, the court said the class was very extensive, and enumerated among them an application to the appointing power in respect to a candidate for a public office as an illustration falling within that class.

But it is contended that the communication exceeded the privilege, in that the affidavit complained of was not confined to matter relating to the credibility of Tuohy as a witness, and for that reason the same was libelous. Assuming that the testimony contained in the affidavit was intended to assail the credibility of Tuohy as a witness, we think the most that can be said of it is that, instead of assailing his general reputation in the community in which he lived, it testified to the personal opinion of the witness, and for that reason was irrelevant to the issue before the committee. Published as it was in the course of proceedings authorized by law, as we have just held, although the allegations therein contained were not pertinent thereto, the law, independent of statute, will not presume malice therefrom, but will require plaintiff to prove express malice in addition thereto before he can recover. This is the rule laid down with reference to alleged libelous publications made in the course of legal proceedings, and we see no reason why it should not obtain here. In *Cooper v. Phipps et al.,* 24 Ore. 357, 33 Pac. 985, 22 L. R. A. 836, in the syllabus it is said:

"A witness in an action is not liable for libel, unless it is shown affirmatively that her statements were not pertinent to the matter in progress, and were spoken maliciously and with a view to defame the one claiming to be injured thereby."

In *Lawson v. Hicks,* 38 Ala. 279, 81 Am. Dec. 49, the court said:

"Words, spoken or written, in the course of a judicial proceeding by the parties, or the counsel, if relevant will not support an action for defamation; nor when irrelevant, if the speaker or writer believed that they were relevant, and had reasonable or probable cause so to believe; nor in any cause, without proof of actual malice."

In *Myers v. Hodges,* 53 Fla. 197, 44 South. 357, in the syllabus it is said:

"Defamatory words published in the due course of a judicial procedure, and not relevant or pertinent to the subject of inquiry, are conditionally or qualifiedly privileged; that is, *prima facie* privileged. If the publication be irrelevant, they do not necessarily become actionable. They must be malicious as well as irrelevant. If it appear upon the trial that the libelous allegations were published in the due course of legal procedure, though it be proved that the allegations were not pertinent to the legal procedure, still the law does not presume malice on the part of the defendant; but the plaintiff must prove express malice, to entitle him to recover. The simple fact that the libelous matters were publishel in the due course of legal procedure, though the libelous matters were impertinent, rebuts the *prima facie* presumption of malice, and makes it incumbent on the plaintiff to prove express malice; the case being what is called a conditionally privileged publication."

Without questioning the rule to be that the burden of proving malice was upon him as stated, it is next contended by counsel for Tuohy that the court erred in taking the question of malice away from the jury, which he did in instructing peremptorily for defendant. Not so, for the reason that there was no evidence of malice to go to the jury, and that, too, whether the burden of proving or disproving it was one way or the other. In instructing the jury as stated, the court so found and stated:

"Six years had intervened from the time the plaintiff was discharged, by the defendant until the time of the making of this alleged libelous publication. During that time, so far as the evidence goes, there was nothing to indicate any ill feeling existed on the part of the defendant against the plaintiff, other than the fact that he had been discharged six years prior to that time and some little difficulty occurred then; there was no evidence to show any hostility or ill feeling. The evidence shows that, at the time this application was made to the defendant for the affidavit to be used in the manner suggested, he hesitated and then refused absolutely at first to make it. That upon urgent solicitation upon the part of Mr. Hoffman that it would only be used for one purpose and never would be seen beyond the Department of Justice or in the Senate committee before which it was going to be used, and the further promise that it was a privileged communication, this defendant finally consented to

make an affidavit. One was dictated by Mr. Hoffman. Its terms seemingly were too harsh and reflected too much upon the plaintiff, and Mr. Halsell refused to make it. Then it was suggested that Mr. Hoffman dictate another affidavit, and this was done, and then again, after having been assured that this affidavit would be used only for one purpose, and that for the purpose of refuting the charges made against Mr. Embry in the United States Department of Justice and before the subcommittee of the United States Senate, the Judicial Committee, consented to make the affidavit. It is very evident to the mind of the court that under those circumstances, and with no evidence to controvert or contradict these propositions, if a judgment were rendered by this jury against the defendant, the court could not in conscience allow the verdict to stand. For we believe that the evidence in this case shows conclusively that Mr. Halsell was not actuated by any malice or malicious motives or actuated by other than worthy motives; that is, the protection and defense of a man who had been assaulted in the Department of Justice by the affidavits made by the plaintiff."

This being the state of the record, the duty of the court was clear, and the rule announced in the syllabus in *Myers v. Hodges, supra,* obtains here:

"The facts being uncontroverted, the court is to determine whether or not the publication is privileged. If the publication be absolutely privileged, that determines the action. If the publication be conditionally privileged, then it is a matter of law for the court to determine whether there is any intrinsic or extrinsic evidence of malice. If there is no such evidence, it is proper for the court to direct a verdict for the defendant."

This was done and, there being no error in the record, the judgment of the trial court is affirmed.

HAYES, WILLIAMS, and DUNN, JJ., concur; KANE, J., absent, and not participating.