160 So.2d 1

**STATE of Alabama**

v.

**SELMA FOUNDRY & MACHINE CO., Inc.**

**2 Div. 428.**

Supreme Court of Alabama.

Oct. 17, 1963.

Rehearing Denied Feb. 6, 1964.

Richmond M. Flowers, Atty. Gen., and Wm. H. Burton, Asst. Atty. Gen., for appellant.

**162**

Reeves & Stewart, Selma, for appellee.

PER CURIAM.

This is an appeal by the State of Alabama from a final decree of the Circuit Court of Dallas County, in equity, vacating and setting aside a deficiency sales tax assessment covering the period from April 1, 1951, through March 31, 1954, and which was made by the State Department of Revenue against the Selma Foundry & Machine Company, a corporation, the appellee here.

Appellee is engaged in business in Selma, Alabama, as a foundry and mill supplier. The transactions under consideration are sales of tangible personal property consisting of so-called saw filing and knife grinding equipment which were made by the appellee to certain sawmills and lumber companies during the afore-mentioned period. The specific items of tangible personal property involved in the sales are those set forth under category 1, paragraph 5, of the appellee's bill of complaint, and by agreement made between the parties are expressly so confined.

These items are best described from the evidence so presented, as follows:

1. Saw Sharpeners—Machines used in sharpening the teeth of various types of saws, including band saws, round saws, and circular saws which are used on the rig and also for trimming after the lumber has gone through the rig.

2. Knife Grinders—Machines used in sharpening various types of knives and chipper machine knives for cutting pulpwood chips.

3. Saw Stretchers—Used to stretch band saws for the purpose of putting the tension back into the metal of the saw.

4. Swages (including swage parts)—Used to spread the tips of the teeth on band saws. The swages sold by the Appellee in this case were mainly, if not entirely, hand tools.

5. Saw Sets—A hand tool used to reset the newly sharpened teeth on band saws and on certain circular saws.

6. Swager Shaper—A hand tool used to reshape the teeth uniformly of saws after they are sharpened

7. Saw Guides—Stands which hold the band saws while being swaged or sharpened.

8. Emery Wheel—Used on both saw and knife sharpeners and grinders to sharpen the teeth of a saw or the blade of a knife.

9. Jointer Stones—Used on knife grinders; performs the same function as the emery wheel.

10. Miscellaneous Saw and Knife Sharpening Equipment. The saws used by the purchaser mills are band saws, circular saws and round saws.

The saws, as distinguished from the so-called saw sharpening and knife grinding items, are used by the sawmills to cut logs into rough boards and lumber, and also to trim the lumber so cut. The planer machine knives and chipping machine knives are used respectively to dress the lumber or to produce wood chips. The saws and knives are admittedly parts of machines which are used in manufacturing or processing lumber and related products; and the sales thereof are conceded to fall within the exemption under Title 51, § 755(p), Code of Alabama 1940, as amended. No attempt then has been made by the appellant to tax the saws and the knives.

There is no contention made that the sales of the items of tangible personal property, which are above listed, when made by the appellee to the mills were not sales at retail and that the mills did not use the items and did not resell them; so, such sales will be treated as sales made by the appellee at retail. Moreover, no contention has been made that we can find that the various items of tangible personal property involved are not machines, and they will, for the purpose of this opinion, be so treated.

The only issue of consequence involved in this appeal is whether the state sales tax is due on the sale of said items when sold by the appellee to said mills, or whether such sales fall within the category of exempt sales under Subsection (p) of § 755, as amended, Title 51, Code of Alabama 1940. It is conceded by the appellee that these sales would be subject to the sales tax if they did not allegedly come within the exemption.

This subsection, in so far as it is applicable here, provides for an exemption as to the gross proceeds of the sales of machines, and parts therefor, used in the manufacturing or processing of tangible personal property. It is quoted as follows:

"§ 755. Exemptions.—* * * (p) The gross proceeds of the sale of machines used in mining, quarrying, compounding, processing and manufacturing of tangible personal property; provided that the term 'machines,' as herein used, shall include machinery which is used for mining, quarrying, compounding, processing or manufacturing tangible personal property, and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used."

It is not disputed that the saws and knives, which are reconditioned and sharpened by the saw sharpeners, knife grinders, and the other items involved in this appeal, are purchased as saws and knives from the manufacturer and are ready to be used on the rig or planer when purchased by the mills. The brochures published by certain of the manufacturers and which are in evidence as exhibits, together with the testimony presented at the trial, clearly show this to be true.

The two witnesses, Mr. Gentry and Mr. Sewell, who testified in behalf of the appellant, and who at least had some knowledge of or experience in the lumber business, testified that most of the saws which they had seen taken to the filing room from the mill for reconditioning had teeth on them, or in the case of knives when taken from the planer or the chipper to the grinding room, that the edges of the knives were not entirely worn off. Two witnesses, Mr. Horton and Mr Hendon, who testified in behalf of the appellee, and who obviously had had considerable experience in this field, testified substantially to the same effect. It is true that both stated that they had known of cases where the saws, which had no teeth at all, were taken from the rig to the filing room, the teeth having been completely worn or broken off. On cross-examination, however, they both stated that such cases were exceptional. The usual case they said was for the saw to still have teeth under the circumstances, but that the teeth were in need of being reconditioned

and resharpened before the saws could be used again. There is no material conflict then in the evidence, and the issue actually resolves itself as to whether the reconditioning and resharpening of the saws and the knives in the filing or the grinding constitutes "manufacturing" or "processing" within the meaning of the exemption statute, Title 51, §§ 755(p), as amended, supra.

The appellee first raised the point that as the final decree was not a unit decree, and as the appellant has argued all of its assignments of error in bulk, and as some of the assignment are not well taken, the rule is that this would make them all bad and no reversible error is made to appear. In this respect, appellee relies on the rules which are said to be stated in Moseley v. Alabama Power Company, 246 Ala. 416, 21 So.2d 305(1).

The record shows that, by a stipulation made between the parties, the issue in this case is confined to the items of tangible personal property which are referred to only in category 1, paragraph 5, of the bill of complaint. The items under categories 2, 3, and 4 were disposed of by a stipulation and by agreement between the parties. The final decree of the lower court disposed of categories 2, 3, and 4 by referring to the stipulation. This left only for decision by the circuit court the issue as it related exclusively to the items in category 1. Moreover, in the notice of appeal, the appellant has confined its appeal to the judgment and decision of the lower court as it relates only to the items listed under category 1 of the bill of complaint. The one remaining issue in the case is whether or not the sales of these items were sales of machines, or parts therefore, used in manufacturing or processing tangible personal property. If so, then such sales would fall within the exemption contained in Title 51, § 755(p), as amended, supra.

■ These things being considered, we do not agree with appellee's contention, as it appears, that not all of the assignments of error are related to the one issue in the case. The exception noted in White Dairy Company v. Sims, 230 Ala. 561, 161 So. 812(2), where all the assignments relate to a kindred question, is clearly applicable.

Appellee argues that as the circuit court found, from the oral testimony and the evidence, and as a matter of fact, that all the items designated in category 1 of the bill of complaint, as amended, were either machines, or parts or replacements therefor used directly or indirectly in manufacturing and processing tangible personal property; that under the rules stated in Fuller v. Blackwell, 246 Ala. 576, 21 So. 2d 617(1), and other cases cited, that such findings of fact by the lower court are presumed to be correct and should not be disturbed unless found to be palpably wrong.

■ There is no material conflict in the evidence in this case. This court, on this appeal, is being called upon to determine whether the lower court took an erroneous view of the law as applied to facts substantially not in conflict. Under the circumstances, the rule relied upon by the appellee does not apply. Department of Industrial Relations v. Tomlinson, 251 Ala. 144, 36 So.2d 496(9).

This leaves for decision only the question of whether the saw sharpeners, swages, saw stretchers, knife grinders, emery wheels, jointer stones, and the other items of equipment used to recondition and sharpen the saws and knives for return to the production line in the sawmill, were machines coming within the purview of Title 51, § 755(p), as amended, Code of Alabama 1940. If so, the sales made by appellee of such items to the mills would not be subject to the sales tax under the exemption contained in the statute.

There is no contention made by appellant that the various items involved are not machines, and we reiterate that they will be so treated for sake of this opinion. The sole question then is whether or not they are used in the manufacturing and pro-

cessing of tangible personal property within the meaning of the statute. These terms are not defined in the Act, so we must go to the generally accepted definitions to determine their meaning.

In State v. Joe H. Brady & Associates, 264 Ala. 397, 87 So.2d 852, 853(1), where we held the sales of the chain saws there involved not to come within the scope of this same exemption, we took into consideration the following factors in relationship to the meaning of the terms "manufacturing" and "processing" in making that determination:

"In the case of State v. Try-Me Bottling Co., 257 Ala. 128, 57 So.2d 537, 539, this court stated:

" 'The words manufacturing, processing and compounding are used disjunctively in the statute and are evidently intended to have a broad and all inclusive meaning. There is no attempt in the statute to limit or qualify their meaning. In other words, the three words so used are intended to cover all the operations or processes by which the finished or *ultimate product has been integrated from elements originally diverse in their forms.'*

"Does the usage of the saws in the manner above outlined constitute an operation or process 'by which the finished or ultimate product has been integrated from elements *originally diverse in their forms*'? * * *" (Emphasis supplied.)

These terms were considered in the case of Alabama Power Company v. State, 267 Ala. 617, 103 So.2d 780, 782. There under consideration was the Use Tax Exemption provision, Title 51, § 789(p), as amended, which is identical in wording with § 755(p), Code of Alabama 1940, here involved. We, in effect, gave them the same meaning. In that case, we determined that pump parts and attachments for a machine used for hydraulic disposal of ash residue from the boiler furnaces, which furnaces played a part in the manufacture of electricity, was not a machine used in the manufacturing or processing of electricity or tangible personal property.

" 'The Court concludes that the essential function of the hydraulic ash disposal system is not production, but *is rather maintenance of the plant machinery* and premises free of accumulation of waste material, and that the assessment of use tax upon its component parts was proper. * * *' " (Emphasis supplied.)

The definitions of "manufacture" and "manufacturing," contained in the Century Dictionary and in Webster's New International Dictionary, Second Edition, and in Words and Phrases, Permanent Edition, Vol. 26, like the definition in the Brady case, supra, also suggest a complete change in the original substance or material.

" 'Manufacture' implies a change. There must be transformation; a new and different article must emerge, having a distinctive name, character, or use. * * *" Words and Phrases, Permanent Edition, Vol. 26, page 611.

See also the numerous references, and cases cited substantially to the same effect under "manufacture" and "manufacturing" in the same volume and in the Pocket Part.

We have carefully read the cases cited by both the appellee and the appellant on this point; but, we find from the numerous references contained in Words and Phrases that the great majority of the cases, both from the state and federal courts, are in agreement with the definition quoted above.

Appellee strongly relies upon our case of State v. Calumet and Hecla Consol. Copper Company, 259 Ala. 225, 66 So.2d 726, which relates mainly to parts and replacements for machines used in manufacturing tangible personal property, and holds that such parts and replacements come within the exemption. We do not, however, believe

that the doctrine of that case can be extended to include the reconditioning and repairing of saws and knives which never lose their identity as such.

The definitions of the words "manufacturing" and "processing" contained in the Brady and Try-Me Bottling Company cases, supra, suggest, as to both, that the finished or ultimate product be integrated from the elements originally diverse in forms.

█ It does not appear in this case that the saws and the knives ever lose their identity as such. The machines involved act mainly on the teeth of the saws and the edges of the knives, and in reshaping and resharpening them for further use as saws and knives. A new article or object has not emerged. The saws and knives then have merely been reconditioned and repaired to enable them for continued use on such rig, planer or other machines in the mill. The sales of the items in category 1 of the bill of complaint by the appellee to the mills do not, for said reasons, come within the exemption, and are subject to the sales tax law.

On remandment of this cause, the trial court will enter a decree or judgment for appellant for the amounts appearing in paragraph 6 of the stipulation between the parties showing date of March 29, 1961.

For error on the part of the trial court in holding that the items listed in category 1 are exempt from the sales tax, the decree is due to be reversed and the cause remanded for conformity herewith. It is so ordered.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by the court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, COLEMAN, and HARWOOD, JJ., concur.