William F. CRITTENDON and William F. Crittendon, M.D., Inc., Appellees,

v.

COMBINED COMMUNICATIONS CORPORATION, an Oklahoma corporation, Appellant.

No. 53029.

Supreme Court of Oklahoma.

Dec. 24, 1985.

Rehearing Denied March 10, 1986.

Fielding D. Hass, and Luttrell, Pendarvis & Rawlinson by John M. Luttrell, Norman, for appellees.

Andrews Davis Legg Bixler by Roy J. Davis and Robert D. Nelon, Oklahoma City, and Satterlee & Stephens by Robert M. Callagy, and Barbara L. Wartelle, New York City, for appellant.

Bonds, Matthews, Bonds & Hayes by A. Camp Bonds, Jr., Muskogee, and Nixon, Hargrave, Devans & Doyle by John B. McCrory, Robert C. Bernius, Mary Louise Barhite, Rochester, N.Y., for amici curiae Muskogee Phoenix & Times-Democrat and The Tulsa World.

Jerry D. Sokolosky, Oklahoma City, for amici curiae Oklahoma Press Ass'n.

Nat. Ass'n of Broadcasters by Erwin G. Krasnow and Julian L. Shepard, Washington, D.C., for amicus curiae Nat. Ass'n of Broadcasters.

HODGES, Justice.

This appeal presents two primary questions: (1) Did the trial court err in submitting the issue of statutory privilege to the jury? (2) Were the broadcasts concerning the default hearing and judgment substantially accurate so as to be considered a fair and true report of a judicial proceeding and, therefore, privileged under 12 O.S. 1981 § 1443.1? We answer both questions in the affirmative. Based on our examination of this case, we find the judgment of the trial court should be reversed and the case remanded in conformity herewith.

The pertinent and undisputed facts are that Deanna Morrell brought a malpractice action against William F. Crittendon, a physician, on September 26, 1977, alleging Dr. Crittendon had performed an unnecessary hysterectomy. Dr. Crittendon failed to timely file an answer or other responsive pleading to Morrell's petition within the answer period. Morrell then moved for entry of a default judgment and in support submitted proof of a prima facie case through testimony of an expert medical witness and herself during a two-day hearing held on October 31, 1977 and November 1, 1977. On November 1, 1977, the trial court entered a judgment against Dr. Crittendon and awarded Morrell $106,700 in damages.

On November 1, 1977, Combined Communications Corporation, owner and operator of television station KOCO–TV in Oklahoma City, Oklahoma, (KOCO–TV or appellant), was contacted by Morrell regarding the hearing and judgment. Terese Arena, a reporter, and Paula McCarter, a camerawoman for KOCO–TV, were assigned to interview Morrell regarding the hearing and judgment and a videotaped interview was conducted that afternoon. In compiling the story, KOCO–TV made an unsuccessful attempt to obtain a statement from Dr. Crittendon at his office. To complete the news story McCarter filmed the outside of Dr. Crittendon's office building to show an attempt had been made to interview him. Arena telephoned the Cleveland County Court Clerk's office and verified that the default judgment had been entered that day against Dr. Crittendon.

The evening of November 1, 1977, KOCO–TV aired the news report on its regularly scheduled 5:30 p.m. newscast and in a slightly shortened version on its 10:00 p.m. newscast. The report began with anchorman Dean Swanson stating:

"A former Norman woman won a malpractice suit by default today after her physician failed to show up for the hearing. She sued for malpractice because

she claims the doctor performed an unnecessary hysterectomy on her."

Arena then stated:

"23 year old Deanna Morrell was admitted to Norman municipal hospital in May, 1976 for observation of appendicitis. Six days later her physician, Dr. William Crittendon, told her that there were lesions on her uterus and that she needed a hysterectomy immediately."

Deanna Morrell then stated:

"When the suit was filed September 26 of this year and Dr. Crittendon and his attorneys had until October 26 to file a reply to the lawsuit, and it was never filed—there was—no one came from his insurance company and no one that represented him, you know, showed up that were there, any of them."

Arena concluded with a simultaneous video of Crittendon's office building:

"She says the pathologist report later showed that her uterus was perfectly healthy. Morrell filed a $216,000 malpractice suit against Dr. Crittendon last September. The court gave him a month to respond, but he never filed an answer. When Ms. Morrell and her attorney showed for today's hearing, neither Dr. Crittendon, his attorney nor his insurance company appeared in Court. The receptionist in Dr. Crittendon's office told me that the doctor had just left to catch a plane out of town and that he has 30 days to ask that the decision be vacated and a new hearing be called. Deanna Morrell meanwhile says that no money on earth could compensate for what has happened to her. She merely wants to let the public know to prevent this kind of thing from happening again. Terese Arena, Eye Witness News."

On November 10, 1977, subsequent to the broadcasts in question, the default judgment was vacated by the trial court.

Dr. Crittendon thereafter brought the present defamation action against KOCO–TV seeking both actual and punitive damages. During the trial, Dr. Crittendon joined as a party plaintiff his professional corporation, William F. Crittendon, M.D.,

Inc. Plaintiffs will be referred to collectively as Crittendon or appellee. The jury returned a verdict in favor of Crittendon for $555,000 actual damages and $25,000 punitive damages and a judgment was entered thereon.

## I.

■ KOCO–TV argues the broadcasts are absolutely privileged as a matter of law under 12 O.S.1981 § 1443.1 [1] and the federal and state constitutions and, thus, are not actionable as libel.

In *Cobb v. Oklahoma Pub. Co.*, 42 Okla. 314, 140 P. 1079, 1081 (1914), this Court reiterated the general rule in actions for damages for a libelous publication which was previously adopted in *Tuohy v. Halsell*, 35 Okla. 61, 128 P. 126 (1912), as follows:

> "The rule in such cases is that, where there is no dispute as to the circumstances under which a publication is made—that is, where there is no dispute as to what the publication was, what it was about, and who made it—or where the language in the publication is plain and unambiguous, it is a question of law for the court to determine whether or not such publication was privileged."

In the present case, the circumstances of the publication—that is, the content of the publications, who made it and what it was about—are not in dispute. We conclude the trial court erred in submitting to the jury the question whether or not the statutory privilege obtained. Because the facts are undisputed the trial court should have resolved the issue of privilege as a matter of law.

In *Douthitt v. State Nat. Bank of Marlow*, 42 Okl. 676, 142 P. 1009 (1914), this Court found it harmless error the submission to the jury a question of law which the trial court should have decided where the substantial rights of the complaining party were not prejudiced. In the instant case, however, we find it was reversible error for the trial judge to submit to the jury the question of law as to whether the broadcasts were privileged. Because, as a matter of law, the broadcasts were privileged pursuant to 12 O.S.1981 § 1443.1, as will be determined below, the trial court in submitting the privilege issue to the jury gave appellee the opportunity for the jury to find otherwise which it ultimately so found. Such error resulted in prejudicing the substantial rights of appellant. 12 O.S.1981 § 78. For this reason, we consider the trial court's error sufficiently prejudicial so as to warrant reversal.

## II.

■ We reject the trial court's implicit determination that the broadcasts were not privileged under Section 1443.1. We are mindful of the rule that if there is any evidence reasonably tending to support the verdict, this Court will not reverse the determination of the jury on the basis of insufficient evidence. *Otis Elevator Co. v. Melott*, 281 P.2d 408 (1955). Inasmuch as the issue of statutory privilege should have properly been considered by the trial court as a question of law, the sufficiency of the evidence should not be determined in accordance with the rule applicable to questions of fact determined by a jury verdict and judgment thereon. *Cf. State v. Selma Foundry & Machine Co.*, 276 Ala. 161, 160 So.2d 1, 4 (1963); *Bryan v. Durr*, 209 So.2d 548, 550 (La.App. 4th Cir.1968). This appeal presents to this Court the question whether the trial court properly decided the

---

**1.** 12 O.S.1981 § 1443.1 provides in relevant part:
"A. A privileged publication or communication is one made:

. . . . .

Third. By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon...."

"B. No publication which under this section would be privileged shall be punishable as libel."
At the time the judgment was rendered in 1978, the language of the governing statute, 12 O.S. 1971 § 1443 (Third) (repealed 1980), was substantially the same as the pertinent language in the above quoted statute.

privilege issue, a question of law, based on the facts substantially not in conflict.

We now turn our attention to the core issue whether the broadcasts were a "fair and true report" of the default hearing. If so, the broadcasts are privileged under 12 O.S.1981 § 1443.1 and appellant would not be subject to liability.

Crittendon argues the broadcasts were false and misleading. The broadcast segment singled out by Crittendon as the "gravest falsehood of all" was the statement: "She says the pathologist's report later showed that her uterus was perfectly healthy." KOCO-TV concedes that prior to the broadcasts its reporters did not review the pathology report which had been introduced in evidence at the default hearing as part of Morrell's medical records. Such report stated in part:

> "The squamous epithelium of the ectocervix is free of signs of malignant change. Squamous metaplasia is noted and focal areas of active chronic cervicitis are encountered. Epithelial erosion has occurred in some instances."

However, Dr. Barry Jacobs, Morrell's expert witness, testified in the default hearing that based upon his analysis of Morrell's medical records, Morrell's uterus was "perfectly normal" except for a minor cervical irritation which occurred in 90–95% of all women. He further testified the pathology report indicated that Morrell's uterus had "nothing", her Pap smears were normal, "there was nothing in that pathology report, nor in the operative report, his description of performing the procedure" and "there was no reason to do an elective hysterectomy on a twenty-one year old woman." At the close of the two-day default hearing the trial judge stated "the evidence shows reason to believe unnecessary surgery was performed."

The majority of jurisdictions,[2] have adopted the position of the Restatement (Second) of Torts § 611, Comment f (1977) that provides it is unnecessary that a report be "exact in every immaterial detail or that it conform to that precision demanded in technical and scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings." In assessing accuracy, courts generally avoid dissection of language in search of precise technical denotations. Instead they focus on the common understanding of the words.[3]

The present controversy centers around the import of the words "healthy" and "normal." The definitions of these words contained in various dictionaries suggest that, in the common understanding, the concept of healthy encompasses that of normal.[4] Given the overlapping meanings,

---

**2.** *E.g.,* S. Metcalf, *Rights and Liabilities of Publishers, Broadcasters and Reporters* § 1.78 (1984); W. Prosser, *Law of Torts,* § 118 at 832 (4th ed. 1971). *See also, Williams v. WCAU–TV,* 555 F.Supp. 198, 202 (E.D.Penn.1983) ("It is not necessary to establish the precise truth of the broadcast statements, if the statement is true in substance, inaccuracies of expression or detail are immaterial.... A statement is substantially accurate if its 'gist' or 'sting' is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced.")

**3.** *See e.g., Holy Spirit Ass'n v. New York Times Co.,* 49 N.Y.2d 63, 424 N.Y.S.2d 165, 399 N.E.2d 1185, 1187 (N.Y.1979) ("[W]hen determining whether an article constitutes a 'fair and true' report, the language used therein should not be dissected and analyzed with a lexicographer's precision ... Nor should a fair report which is not misleading, composed and phrased under the exigencies of a publication deadline, be thereafter parsed and dissected on the basis of precise denotative meanings which may literally, although not contextually, be ascribed to the words.")

**4.** *See e.g., The American Heritage Dictionary of the English Language* 607 (1969) (*health:* the state of an organism functioning *normally* without disease or abnormality). S.I. Hayakawa, *Modern Guide to Synonyms* 265 (1968) (healthy ... refers to *normal* or excellent functioning ...). *Webster's Third New International Dictionary* 1043 (1963) (*health:* the condition of an organism or one of its parts in which it performs its vital functions *normally* or properly). *Id.* at 1044 (*healthy:* functioning properly or *normally* in its vital functions). *Id.* at 1540 (*normal:* characterized by balanced, well-integrated functioning of the organism as a whole within the limits imposed by the environment and in accord with the pattern of one's biological endowment).

the gist or sting of the statement would be the same, whichever term were used. Applying the substantial accuracy test of the Restatement (Second) of Torts § 611, Comment f (1977) to the challenged statement, we must conclude that the gist of the reported statement was the same as the statement actually made during the judicial proceeding.

Moreover, even if we were to find this isolated language untrue, we believe the gist of the entire report was both fair and true. That is, a malpractice action had been brought against Dr. Crittendon, a default judgment against Dr. Crittendon was entered and $106,700 damages were awarded to Morrell upon the trial judge's finding that Dr. Crittendon had performed unnecessary surgery. The trial court took an erroneous position of the law as applied to the instant undisputed facts. We find appellant fairly and truthfully reported the default hearing and thus is protected by the statutory absolute privilege against appellee's defamation suit.

Having found the report privileged as a matter of statutory law under 12 O.S.1981 § 1443.1, we need not consider the question whether a constitutional privilege of fair reportage obtains. *Lunow v. Fairchance Lumber Co.*, 389 F.2d 212, 214 (10th Cir. 1968). In addition, it is unnecessary for us to address the issue of punitive damages for we have concluded the statutory privileged report is not actionable as libel.

For error on the part of the trial court in submitting the issue of privilege to the jury and in entering a judgment on the verdict which implicitly determined the report was not privileged under 12 O.S.1981 § 1443.1, the judgment is reversed and the case is remanded with directions to the district court to enter a judgment in accordance with the views expressed in this opinion.

Judgment of trial court REVERSED; case REMANDED.

SIMMS, C.J., OPALA, KAUGER and SUMMERS, JJ., and ROBINSON, Special Justice, concur.

DOOLIN, V.C.J., and LAVENDER and HARGRAVE, JJ., dissent.

WILSON, J., disqualified.

HARGRAVE, Justice, dissenting.

I must respectfully dissent.

The majority determines that the privileged status of this publication is a question of law for the court's resolution citing *Cobb v. Okla. Pub. Co.*, 42 Okl. 314, 140 P. 1079 (1914). In so doing, the court has extracted the first syllabus of that case and disregarded the remaining considerations which led, in *Cobb*, to a determination that the truth and fairness of the article was properly submitted to a jury.

*Cobb, supra*, as well as the case before the court now, deals with reports of judicial proceedings where the publication is not a verbatim republication of the proceeding. In *Cobb*, a portion of the report was a verbatim extract of the Attorney General's brief. The court makes the following observation about the remainder of the report.

"But as the article in question included not only the extract above, but included also a general and rather lengthy comment on alleged conditions existing on the east side of the state as to minor Indians being defrauded of their allotments, as well as some direct comment upon the particular proceedings against Judge T.S. Cobb, *the issue arose* as to whether the conditions imposed by statute had been violated, and out of such issue arose the questions whether the report was fair, ... These were issues of fact to be determined from the evidence by the jury.

'Where the report is a verbatim account of what took place at the trial, and differs so little that no reasonable man could say that what was omitted could affect the minds of the jury, it is the duty of the court to pronounce the report privileged. But, if the question of the fairness of the report is capable of different conclusions, the question of privilege is for the jury.' 18 Am. & Eng. (2d Ed.)

1045, and authorities cited under note 7." (emphasis added) 140 P. 1079, 1081, 1082. In *Cobb*, the court applied the privilege as a matter of law to the verbatim extract of the judicial proceeding, holding it privileged, but ruled that portion of the article which was termed comment created a jury question as to its fairness.

In the case at bar, the whole of the televised report was comment. None of it was a verbatim report of the transcript of the default. The report was, in its entirety, comment by the winning party and a news reporter summarizing the proceedings in court. Whether this summary was fair and true is, under *Cobb, supra,* a jury question.

There remains another factor which has become highly material through the advent of television broadcast journalism. *Crittendon* is a case dealing with a visually broadcast summary of a default judgment reported by a journalist and the successful litigant. It included lengthy comment by that party and allegations that the report contains an unsuccessful attempt to acquire an interview with the doctor. Those attempts were broadcast and there are allegations that these scenes were designed to make it appear the doctor was purposely avoiding the interview with "guilty motives".

To deal correctly with this type of publication the court must consider the information conveyed by the video portion of the broadcast, or, if you will, the visual innuendo as well as the spoken word. Failure to do otherwise is to ignore the important distinction between television and other types of journalism.

The visual aspect of this broadcast is an additional compelling reason that the fair and true aspect of this case presents a question of fact for the jury.

Finally, from a common sense standpoint, fairness, just as reasonableness, is a question uniquely within the province of the jury. Only a jury of twelve good men and women can decide either of these issues if there is any question at all. Resolution of these issues has nothing to do with law. Only if the evidence raises no issue on the point should fairness be withdrawn from a jury.

DOOLIN, V.C.J., and LAVENDER, J., concur in the views expressed in this dissent.