1998 OK CIV APP 77

**Ronald Lee JOHNSON, Appellant,**

v.

**The BLACK CHRONICLE, INC., an Oklahoma corporation; Russell M. Perry; Albert J. Lindsey; Laurel Talley; and Robert M. Barnes; Appellee,**

and

**Harold Roberts, Defendant.**

**No. 89733.**

Court of Civil Appeals of Oklahoma, Division No. 4.

March 10, 1998.

Certiorari Denied June 3, 1998.

Lori Combs, Oklahoma City, for Appellant.

Jerry D. Sokolosky, Oklahoma City, for Appellees.

## MEMORANDUM OPINION

RAPP, Judge.

¶1 Trial court plaintiff, Ronald Lee Johnson, appeals the trial court's grant of summary judgment in favor of defendants, The Black Chronicle, Inc., its owner, and named employees and agents (collectively referred to as The Newspaper), in this action for defamation, invasion of privacy, and intentional infliction of emotional distress.

### I.

¶2 Johnson is an attorney and former executive director of the Oklahoma Human Rights Commission. A week after Johnson resigned his post with the Commission, The Newspaper published a front-page story in its August 11, 1994 edition, headlined, "Rights Agency Director Faces Rights Complaints; Resigns With Ultimatum." The story stated Johnson:

*** had faced a sexual harassment complaint from an agency employee;

*** had faced a racial discrimination complaint filed by a former member of the Commission;

*** had narrowly escaped being fired two months previously by a four-to-three vote; and,

*** was given "an ultimatum" shortly before he resigned.

¶3 The Newspaper's story also stated state senators were threatening to drastically cut the agency's budget unless "something was done" about Johnson. The story quoted several unnamed commissioners and "sources familiar with the inner workings of the commission." The Newspaper did not contact Johnson before the story was published. However, before publication, an assistant attorney general serving as liaison counsel for the Commission informed an alleged agent of The Newspaper that she knew of no com-

plaints of sexual harassment filed against Johnson.

¶4 Johnson complained about the story and demanded a retraction. The Newspaper interviewed Johnson and published a follow-up story, detailing Johnson's denials of much of the original story but concluding with a paragraph asserting that all of its sources confirmed "each element of the Aug. 11 story when told that Mr. Johnson was denying the story's accuracy."

¶5 Johnson filed a petition asserting claims of defamation, invasion of privacy, and intentional infliction of emotional distress. Both sides filed motions for summary judgment, supported by affidavits. The trial court granted The Newspaper's motion for summary judgment. Johnson appeals.[1]

### II.

¶6 Summary judgment is appropriate where there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law. *Weeks v. Wedgewood Village, Inc.*, 1976 OK 72, 554 P.2d 780. All inferences and conclusions to be drawn must be viewed in a light most favorable to the party opposing the motion, and the motion should be denied if the facts concerning any issue conflict or if reasonable persons, in the exercise of fair and impartial judgment, might reach different conclusions from the undisputed facts concerning any issue. *Weaver v. Pryor Jeffersonian*, 1977 OK 163, 569 P.2d 967.

### III.

¶7 Johnson first asserts the trial court erred because The Newspaper failed to respond to his motion for summary judgment within 15 days, as required by Oklahoma District Court Rule 4(e), 12 O.S.1991, ch. 2, app. Citing *Spirgis v. Circle K Stores, Inc.*, 1987 OK.CIV.APP. 45, 743 P.2d 682 (approved for publication by the Oklahoma Supreme Court), Johnson asserts this failure to timely respond means his motion for summary judgment is deemed confessed.

1. The Newspaper filed a Motion to File Supplemental Record on Accelerated Appeal Out of Time. Based on its contents, the motion is granted.

¶ 8  We disagree.  Johnson has misread the holding in *Spirgis*.  Under the more specific District Court Rule 13, "a party's failure to respond results not in a confession of judgment, but in the admission for purpose of summary judgment of '[a]ll material facts set forth in the statement of the movant *which are supported by admissible evidence*.' However, [under Rule 13] a response is not necessary to challenge material facts which are *not* supported by admissible evidence." *Spirgis* at ¶ 9, 743 P.2d at 684.  Even where facts are deemed admitted, a party must show it is entitled to judgment as a matter of law.  *Mooney v. Young Mens Christian Ass'n of Greater Tulsa, Tulsa County,* 1993 OK 33, 849 P.2d 414.  For the reasons expressed below, neither side is entitled to summary judgment.[2]

### IV.

¶ 9  The trial court gave no reason why it entered judgment adverse to Johnson.  The Newspaper initially asserted truth as a defense, then later asserted its story was protected by a statutory privilege.  The Newspaper also asserted Johnson had presented no evidence of actual malice.

¶ 10  We first consider the issue of the statutory privilege.  Title 12 O.S.1991 § 1443.1 exempts privileged publications from punishment as libel.  The privilege includes publications made:

> By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticized.

12 O.S.1991, § 1443.1 (Third).

¶ 11  It is well settled that where the circumstances of a publication are not in

dispute and the publication's language is plain and unambiguous, the issue of whether a publication is privileged under section 1443.1 is a question of law.  *Price v. Walters,* 1996 OK 63, ¶ 26, 918 P.2d 1370, 1375.  That is the case here, as the circumstances of the publication—its content, who made it, and what it was about—are not in dispute.  *Id.* To fall within the privilege, a report need not be exact in every detail.  It is enough that it is substantially accurate, or if its "gist" or "sting" is true.  *Crittendon v. Combined Communications Corp.,* 1985 OK 111, 714 P.2d 1026.

¶ 12  The gist of the newspaper story complained of here is that Johnson resigned as Human Rights Commission executive director under fire and under ironic circumstances, given that he—the person heading Oklahoma's human rights agency—faced complaints about his own attitudes and actions concerning human rights.  These circumstances set out in the story surrounding his resignation unquestionably go to the heart of the story.

¶ 13  The Newspaper's story stated that Johnson faced a "sexual harassment complaint" by an agency employee.  Johnson attached affidavits, including one from the Commission's former affirmative action officer, stating that no complaints of sexual harassment had been filed against him.  The Newspaper submitted evidentiary materials showing an agency employee had accused Johnson of subjecting her to "verbal abuse, job harassment, humiliation and degradation."  While the record shows the employee made a harassment complaint against the Commission, first internally, then to the Oklahoma Merit Protection Commission, it is significant to note that this complaint did not assert sexual harassment.

¶ 14  The Newspaper's report of the employee's complaint initially appears to fall within the privilege's protection for reports of "other proceeding[s] authorized by law."

---

**2.**  We also disagree with Johnson's assertion that the trial court should have stricken The Newspaper's Response/Motion for Summary Judgment because it was not filed at least 20 days before the trial date, as required by District Court Rule

13(a).  The Newspaper originally filed its motion for summary judgment well before the deadline. The trial court was entitled to consider the arguments raised by both sides.

However, the statute also requires the report to be "fair and true." As previously noted, what is missing from the employee's complaint—and is contrary to The Newspaper's story—is any allegation that the harassment was *sexual.* In assessing the accuracy of a news story, courts generally avoid dissection of language in search of precise technical denotations, and instead focus on the common understanding of words. *Crittendon,* 714 P.2d at 1029. Sexual harassment, whether in the legal sense or in the popular vernacular, involves gender-based discrimination. *See Marshall v. OK Rental & Leasing, Inc.,* 1997 OK 34, ¶ 12, 939 P.2d 1116, 1119. The record here does not show that, at the time The Newspaper ran its story, the employee's complaint could be said to be based on *sexual* harassment.[3]

¶ 15 The nature of the story's accusations against Johnson, especially considering his position as head of the Human Rights Commission, go to the heart or gist of the publication. It cannot be said, as a matter of law, that the news story that Johnson faced a sexual harassment complaint was "fair and true." It is not, therefore, covered by the statutory privilege. It follows that The Newspaper was not entitled to summary judgment based on the asserted defense of statutory privilege.[4]

### V.

¶ 16 We next turn to whether Johnson presented evidence to withstand the motion for summary judgment. Johnson is a public figure. To recover for defamation, he must therefore show: (1) the publication of a defamatory statement; (2) that the state-ment was false; and (3) that the defamatory falsehood was made with "actual malice"—with knowledge that it was false or with reckless disregard of whether or not it was false. *Miskovsky v. Oklahoma Pub. Co.,* 1982 OK 8, ¶ 12, 654 P.2d 587, 590–91, *citing New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). It is essential that to recover in such cases, a plaintiff must show evidence of deliberate falsification or reckless publication despite the publisher's awareness of probable falsity. *Washington v. World Pub. Co.,* 1972 OK 166, 506 P.2d 913, *citing St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Although the concept of reckless disregard is difficult to define, the United State Supreme Court has made clear that the defendant must have made the false publication with "a high degree of awareness of ... probable falsity" or must have "entertained serious doubts as to the truth of [the] publication." *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 109 S.Ct. 2678, 2686, 105 L.Ed.2d 562 (1989) (citations omitted).

¶ 17 The question of whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law. *Id.* 109 S.Ct. at 2694. The Newspaper asserts it is entitled to summary judgment because Johnson failed to offer any evidence of actual malice. Ordinarily the burden of proving actual malice is upon the official who complains of defamation. However, on a motion by a defendant for summary judgment in a libel action, the defendant has the burden of showing there is no issue of actual malice in the case. *Weaver,* 1977 OK 163, ¶ 35, 569 P.2d 967, 973.

---

3. The employee eventually filed a lawsuit in Oklahoma County district court asserting harassment by Johnson. She later amended her lawsuit to assert harassment of her and other female employees. However, her lawsuit was filed *after* The Newspaper ran its story. Thus, The Newspaper cannot avail itself of the statutory privilege for reporting on judicial proceedings occurring after the story's publication.

4. As an aid to the trial court, we note that another statement in the article—that a racial discrimination complaint had been filed by a commissioner—may be covered by the privilege. On this point, Johnson submitted affidavits stating no such complaint had been filed, while The News-paper submitted an affidavit from a former commissioner saying she "made complaints to the Commission and other Commissioners" that Johnson was discriminating against her due to her race. Section 1443.1 (Third) covers "any and all criticisms upon the official acts of any and all public officers." The record is inconclusive as to whether the former commissioner's criticisms were aimed at Johnson's official acts. Additionally, the record does not indicate whether the commissioner's remarks were the expressions of opinion or criticisms of a "proceeding authorized by law," which the privilege also covers.

¶ 18 In that regard, the record is sparse. The Newspaper included affidavits by its publisher and the story's writer stating that they had no knowledge that anything in the story was false, and that they had no malice towards Johnson.[5] While those affidavits appear self-serving, a similar affidavit was accepted as evidence in *Hodges v. Oklahoma Journal Pub. Co.*, 1980 OK 102, 617 P.2d 191. There, the supreme court considered whether there was any evidence refuting the affidavit, as well as whether there was any evidence the publication was in conflict with the information the reporter obtained.

¶ 19 In opposition to summary judgment, Johnson submitted the previously mentioned affidavit by a state assistant attorney general serving as liaison counsel for the Commission. The affidavit stated that the attorney spoke to a man identified as Harold Roberts, who was with The Newspaper, and wanted some information about Johnson. The affidavit further stated the attorney told Roberts she knew of no complaint involving sexual harassment. The Newspaper's filings do not address Roberts' role in the publication of the story. Whether Roberts is even an employee of The Newspaper is unclear. The record shows that he filed an answer denying he was an employee, and that the trial court sustained his separately-filed motion for summary judgment.

¶ 20 While Johnson's evidence might not be considered substantial, it is not our function to weigh the evidence when considering a motion for summary judgment. *Oliver v. Farmers Ins. Group of Cos.*, 1997 OK 71, 941 P.2d 985. The materials attached to a response to a motion for summary judgment are not to be held to the standard of competent, admissible evidence. *Davis v. Leitner*, 1989 OK 146, ¶ 13, 782 P.2d 924, 926. It is enough that they reasonably show that the party opposing the motion will be able at the time of trial to present competent, admissible evidence to support the allegations. *Id.* When examined in a light most favorable to the party opposing the motion, Johnson's

evidence presented a question of fact as to whether The Newspaper acted with malice. A trier of fact could find that The Newspaper published the story despite knowledge that it was incorrect, or that The Newspaper entertained serious doubts about the story's accuracy. Therefore, the trial court erred in granting The Newspaper's motion for summary judgment.

## VI.

¶ 21 We are fully cognizant of the chilling effect defamation lawsuits can and do have on the crucial role journalists play in our society. Further, we also note the First Amendment limits state libel law in various respects. When, as here, the plaintiff is a public figure, he cannot recover unless he proves *by clear and convincing evidence* that the defendant published the defamatory statement with actual malice. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 111 S.Ct. 2419, 2429, 115 L.Ed.2d 447 (1991). We deliberately express no opinion on whether Johnson has presented such evidence at this point in the proceedings, but hold only that he presented evidence to withstand the summary judgment motion. Even where a trial judge believes a directed verdict is required, the judge should ordinarily hear the evidence and direct a verdict rather than attempt to try the case in advance on a motion for summary judgment. *Northrip v. Montgomery Ward & Co.*, 1974 OK 142, 529 P.2d 489 (opinion by Doolin, J., with three Justices concurring, two Justices concurring in result, and one Justice concurring specially).

¶ 22 Based on the record before us, we conclude the trial court erred in granting The Newspaper's motion for summary judgment. The trial court decision is RE-VERSED AND REMANDED FOR FURTHER PROCEEDINGS.

¶ 23 STUBBLEFIELD, P.J., and REIF, J., concur.

---

5. The Newspaper admits it published the article under a penname, Robert Barnes, sometimes used by the managing editor. The reason for this action is not given. Moreover, the record is silent relative to any actual statements by The Newspaper's named source.